William Sidney **GILBERT**, Appellant,

v.

**STATE** of Alaska and **H. A. Boucher,** Lieutenant Governor, Appellees.

No 2290.

Supreme Court of Alaska.

Sept. 30, 1974.

John W. Wood, Anchorage, for appellant.

Norman C. Gorsuch, Atty. Gen., Juneau, Timothy G. Middleton, Asst. Atty. Gen., Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

OPINION

ERWIN, Justice.

This appeal involves a challenge to the constitutionality of article II, section 2 of the Alaska Constitution and AS 15.25.030, which collectively conditions eligibility for seeking legislative office upon three years residency in the state and one year in the election district.

Appellant is a citizen of the United States and has been a resident of Alaska

and of his legislative district since September 17, 1973. On June 28, 1974, he filed as a Republican candidate for the state senate in the August 27, 1974, primary election. On July 5, 1974, respondent Lieutenant Governor H. A. "Red" Boucher informed appellant by telegram that his declaration of candidacy was rejected because he did not meet the residency requirements of article II, section 2 of the Alaska Constitution [1] or the requirements of AS 15.25.030.[2] Respondent later confirmed this rejection by letter. It was stipulated below that appellant met all other requirements for the office of state senator.

Appellant petitioned pursuant to AS 22.-10.020(b) for a declaratory judgment that article II, section 2 of the Alaska Constitution abridged his rights of equal protection and effective petition of the government [3] and moved for a preliminary injunction to place his name on the August 27 ballot. The superior court held that the three-year residency requirement served a compelling state interest in assuring that legislators reside in the state a sufficient time to gain an understanding of the history and geography of the state and the needs and problems of its residents. The court further determined that the constitutional convention wisely decided that the one-year required residence in the election district was necessary to permit constituents to recognize, understand and talk with those who

seek public office. As a result, both appellant's petition for a declaratory judgment and his motion for a preliminary injunction were denied. The court awarded attorneys' fees to the state.

Appellant argues that (1) the durational residency requirements of article II, section 2 of the Alaska Constitution should be subjected to strict judicial scrutiny under the equal protection clauses of the state and federal constitutions;[4] (2) that the state has failed to show that a compelling interest is promoted by the requirements; (3) that, even if a compelling interest exists in some specific residency requirement, requiring a period of three years' residency within the state and one year within the election district is excessive; and, (4) the award of attorneys' fees below was an abuse of discretion. More specifically, appellant contends that both residency requirements deprive him of equal protection by (1) limiting his right to seek and hold public office; (2) limiting his ability and the ability of voters who would support him to participate in the electoral process; and, (3) restrict his right to freely travel between the states.

 No specific right of candidacy for public office has been recognized under the Federal Constitution.[5] However, since barriers against candidacy have been treated as limitations upon a fundamental right where they burden such important

---

1. Art. II, sec. 2, Alaska Constitution, provides, in pertinent part:
 A member of the legislature shall be a qualified voter who has been a resident of Alaska for at least three years and of the district from which elected for at least one year, immediately preceding his filing for office.

2. AS 15.25.030 provides in pertinent part:
 A member of a political party who seeks to become a candidate of the party in the primary election shall execute and file a declaration of candidacy. The declaration shall be executed under oath before an officer authorized to take acknowledgments and shall state in substance . . . (8) that the candidate meets the specific residency requirements of the office for which he is a candidate . . . . .

3. Appellant has not briefed the alleged infringement of his right to petition the government before this court and we have not considered it on appeal.

4. We find without merit appellant's novel contention that article II, section 2 of the Alaska Constitution setting residency requirements is invalid under the equal protection clause of article I, section 1 of the same constitution.

5. The Supreme Court has previously held that "[t]he right to become a candidate for state office, like the right to vote for the election of state officers, is a right or privilege of state citizenship, not of national citizenship." Snowden v. Hughes, 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497, 502 (1944) (citations omitted).

rights as free association,[6] franchise,[7] and interstate travel,[8] they are vulnerable to attack under the equal protection clause of the Federal Constitution. Where a challenged statute burdens a fundamental or basic right, it can be sustained only upon a showing that it promotes a compelling governmental interest.[9]

In Bullock v. Carter,[10] the United States Supreme Court reviewed the validity of a Texas statute which required the payment of large filing fees by candidates to defray the expenses of holding primary elections. The court noted that

> the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters.[11]

Because the fee requirement tended to discriminate against both less wealthy candidates and voters who were without large financial resources with which to support a candidate, the Court subjected the requirement to strict scrutiny and found that the state had failed to show it was necessary to promote a legitimate state objective.[12]

In Shapiro v. Thompson[13] and Dunn v. Blumstein,[14] the Supreme Court recognized that durational residency requirements burden the basic constitutional right of inter-state migration. *Shapiro* struck down a durational residency requirement which was a prerequisite to the receipt of welfare benefits. *Dunn* subjected a one-year residency requirement which conditioned the right to vote to strict scrutiny because it burdened both the fundamental right of franchise and the right to interstate travel.

We have previously considered questions involving durational residency requirements in State v. Van Dort,[15] State v. Wylie,[16] and State v. Adams.[17] In each of these cases we applied the compelling state interest test. In *Wylie* we were unable to find a compelling interest for giving a hiring preference to applicants for state employment who had resided in Alaska for at least one year. In *Adams,* we considered the validity of a residency requirement for obtaining a divorce and stated that all durational residency requirements are to be measured by the compelling state interest test.[18] We invalidated a 75-day residency requirement for voting in *Van Dort.* However, we noted

> [w]e do not hereby decide that all durational residency requirements are *ipso facto* unconstitutional.[19]

A number of other courts have considered the burden upon voters imposed by durational residency requirements for political candidates. Federal district courts

---

6. *See, e. g.,* Mancuso v. Taft, 476 F.2d 187 (1st Cir. 1973).

7. *See, e. g.,* Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972). Political hopefuls have standing to attack candidacy restrictions which burden the rights of voters, where the candidates fall within the class of persons allegedly suffering an unequal discrimination. Mancuso v. Taft, 476 F.2d 187 (1st Cir. 1973); *see also,* Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1970).

8. *See, e. g.,* Chimento v. Stark, 353 F.Supp. 1211 (D.N.H.), aff'd mem. 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973); Wellford v. Battaglia, 485 F.2d 1151 (3rd Cir. 1973).

9. Dunn v. Blumstein, 405 U.S. 330, 340–341, 92 S.Ct. 995, 1002, 31 L.Ed.2d 274, 283 (1972); Chimento v. Stark, 353 F.Supp.

1211, 1213 (D.N.H.) aff'd mem. 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973).

10. 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

11. *Id.* at 143, 92 S.Ct. at 856, 31 L.Ed.2d at 99.

12. *Id.* at 149, 92 S.Ct. at 858, 31 L.Ed.2d at 103.

13. 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

14. 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

15. 502 P.2d 453 (Alaska 1972).

16. 516 P.2d 142 (Alaska 1973).

17. 522 P.2d 1125 (Alaska 1974).

18. *Id.* at 1126.

19. 516 P.2d at 148.

have favored the strict compelling interest test in Alabama,[20] Delaware,[21] Michigan,[22] New Hampshire,[23] and Oklahoma.[24] The highest state courts in California[25] and New Jersey[26] have also considered the question and found the strict standard to be the appropriate one.[27]

■ These cases, and our own cases relating to durational residency requirements, lead us to the conclusion that the residency requirements of article II, section 2 of the Alaska Constitution should be viewed with strict judicial scrutiny. We must thus determine whether the requirements of three years' residency in the state and one year in the election district serve a compelling state interest.

The State of Alaska asserts three justifications for upholding the challenged requirements. First, the requirements are necessary to permit exposure of the candidate to his prospective constituents so they may judge his character, knowledge and reputation. Second, they are needed to ensure that legislators are familiar with the diverse character of the state where they will participate in the lawmaking process. Third, specific periods of residency are alleged to protect the state from frivolous candidacies. For the reasons stated below,

we find the first two of these interests to be compelling.

These interests advanced by the state are essentially those which were found sufficient to uphold New Hampshire's seven year residency requirement for the office of Governor in Chimento v. Stark.[28] *Chimento* was affirmed without opinion by the United States Supreme Court after the Court's decision in *Dunn*. If the Court had intended to extend *Dunn* to candidacy requirements, the opportunity was squarely presented in *Chimento*.[29] However, the Court declined to take advantage of this opportunity.

In determining whether the asserted state interests are compelling, we must look not only to those interests but also to the competing individual interests.[30] Chief Justice · Burger observed in Bullock v. Carter:

> In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.[31]

We believe that the three-judge federal panel in Chimento v. Stark correctly analyzed the extent to which these competing interests are affected by a durational residency requirement.

20. McKinney v. Kaminsky, 340 F.Supp. 289 (M.D.Ala.1972); Hadnott v. Amos, 320 F. Supp. 107 (M.D.Ala.1970), aff'd mem., 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971), 405 U.S. 1035, 92 S.Ct. 1304, 31 L.Ed.2d 576 (1972).

21. Wellford v. Battaglia, 343 F.Supp. 143 (D.Del.1972), aff'd, 485 F.2d 1151 (3rd Cir. 1973); *but see* Walker v. Yucht, 352 F.Supp. 85 (D.Del.1972).

22. Alexander v. Kammer, 363 F.Supp. 324 (E.D.Mich.1973); Mogk v. City of Detroit, 335 F.Supp. 698 (E.D.Mich.1971); Green v. McKeon, 335 F.Supp. 630 (E.D.Mich. 1971), aff'd, 468 F.2d 883 (6th Cir. 1972); Bolanowski v. Raich, 330 F.Supp. 724 (E.D.Mich. 1971); Stapleton v. Clerk for the City of Inkster, 311 F.Supp. 1187 (E.D.Mich.1970).

23. Chimento v. Stark, 353 F.Supp. 1211 (D.N.H.), aff'd mem. 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973).

24. Draper v. Phelps, 351 F.Supp. 677 (W.D. Okl.1972).

25. Thompson v. Mellon, 9 Cal.3d 96, 107 Cal.Rptr. 20, 507 P.2d 628 (1973).

26. *See* Gangemi v. Rosengard, 44 N.J. 166, 207 A.2d 665 (1965).

27. *Compare* State ex rel. Gralike v. Walsh. 483 S.W.2d 70 (Mo.1972).

28. 353 F.Supp. 1211 (D.N.H.), aff'd mem. 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973).

29. *See* Hadnott v. Amos, 320 F.Supp. 107 (M.D.Ala.), aff'd mem. 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971), 405 U.S. 1035, 92 S.Ct. 1304, 31 L.Ed.2d 576 (1972).

30. Dunn v. Blumstein, 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274, 280 (1972); see State v. Adams, 522 P.2d 1125, 1131 (Alaska 1974).

31. 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92, 100 (1972).

When examined in a realistic light, we conclude that the seven year residency requirement acts only as a minimal infringement upon the ability of the plaintiff to participate in the election process and that its limiting effect upon the voters' choice of candidates is more hypothetical than real. Any residency requirement limits to some extent the choice of candidates available to the voters. But this is the least of the restrictions limiting candidate availability. The method of nominating candidates, minimum age requirements, and the high cost, even in New Hampshire, of a gubernatorial campaign, are also factors that restrict the number of candidates available to the voters. Moreover, the seven year period does not act as an outright ban on anyone's candidacy for Governor; rather, it delays the eligibility of a candidate to the office of Governor until a time when he has been a resident of the State for seven years. While we recognize that seven years may be a long wait for one aspiring to the office of Governor, it is not a complete barrier to that office. There are lesser but nonetheless important offices that a putative Governor might well fill during the waiting period with benefit both to his own political career and the people of the State.[32]

This reasoning is clearly applicable to Alaska's much shorter three-year legislative residency requirement. Even during that brief period delaying the candidate's right to seek office, the voters remain free to vote for anyone who may lawfully assume office. The impact upon the voters' right to have a meaningful choice of candidates is slight.

We also reject the argument that Alaska's legislative residence requirements are a serious infringement of appellant's right to interstate travel. Unlike the requirements considered in Dunn v. Blumstein and in State v. Van Dort, these requirements do not disenfranchise all new residents of the state. Nor do they tend to deprive a large class of newcomers of the necessities of life as did the restriction considered in Shapiro v. Thompson. Because they potentially limit only that minute class of persons who would move to a new location intending to run for political office, it cannot seriously be asserted that limiting the privilege of candidacy to residents who have lived in the state for three years and in their legislative districts for a year would discourage citizens from exercising their rights to travel.

The asserted interest of the state in assuring that those who govern are acquainted with the conditions, problems, and needs of those who are governed cannot be questioned. Because Alaska is unique in its geography, the ethnic diversity of its peoples and the character of its economy, this interest may well assume even greater importance here than in many other states. A legislator is required to consider and vote upon matters which affect many parts of the state and involve many segments of its economy and its peoples. It is therefore not unreasonable for the state to provide for a three-year period in which a new resident may become familiar with his state before he may legislate solutions to its problems.

Likewise, it is most important that electors have a period in which they may become familiar with the character, habits and reputation of candidates for political office. Modern media campaigns and "packaged" candidates permit political hopefuls to campaign for office with little or no direct contact with the public they seek to serve. It is essential that voters have at least the opportunity to have some direct knowledge of their candidates in order to judge their sincerity and the truth of the claims which these aspirants for public office press forward through the media. It is a minimal requirement at best to ask a candidate to spend one year as a part of the community he hopes to represent in order to satisfy this need.

32. 353 F.Supp. at 1215–1216.

We see no viable alternative means of advancing these important interests alleged by the state. Appellant suggests that these interests may be met by imposing some sort of subjective test upon potential legislators. We disagree. To create a subjective test of candidates' knowledge, understanding or character would necessarily place undue power in the hands of those who would implement such a standard. We think it better that a relative few be delayed from realizing their political aspirations for a relatively brief period than that some group of persons pass upon the fitness of all candidates before they are permitted to present themselves to the voters.

Nor can these interests be protected by relying solely upon the electoral process itself. Voters are, in a sense, "consumers" of the product portrayed by the persons they elect to office. In these days of "packaged" media candidates, they often cannot know what is in the package until they have made their selection and observed the utility of the product. In adopting their constitution, the voters of Alaska chose to protect themselves from unknown deficiencies in their candidates by imposing objective standards upon those who would hold legislative office.

We conclude that while objective tests for candidacy unavoidably place a burden upon the privilege of running for political office, the burden is both temporary and slight and is necessary to promote governmental interests which are compelling.

■ We turn to the question of whether the award of attorneys' fees to the state by the trial court was a proper exercise of discretion by the trial court pursuant to Civil Rule 82. Appellant alleges that the issues litigated here relate to a matter of public interest and contends that awarding fees in this type of controversy will deter citizens from litigating questions of general public concern for fear of incurring the expense of the other party's attorneys' fees.

■■ It is not the purpose of Rule 82 to penalize a party for litigating a good faith claim but rather partially to compensate the prevailing party where such compensation is justified.[33] We have previously intimated that denial of attorneys' fees might be appropriate in a proper case where the public interest is involved.[34] As a matter of sound policy, we hold that it is an abuse of discretion to award attorneys' fees against a losing party who has in good faith raised a question of genuine public interest before the courts. Accordingly, we reverse the award of attorneys' fees to the state in this matter.

Affirmed in part and reversed in part.

---

33. Malvo v. J. C. Penney Co., Inc., 512 P.2d 575, 587 (Alaska 1973),

34. Mobil Oil Corp. v. Local Boundary Comm'n, 518 P.2d 92, 104 (Alaska 1974); Jefferson v. City of Anchorage, 513 P.2d 1099, 1102 (Alaska 1973).