ANCHORAGE, Alaska, a Municipal Corporation, Appellant,

v.

David T. McCABE and Janet W. McCabe, Edward B. Carlstrom, Appellees.

No. 2737.

Supreme Court of Alaska.

Sept. 9, 1977.

---

Jerry A. Wertzbaugher, Asst. Municipal Atty., and Richard Garnett III, Municipal Atty., Anchorage, for appellant.

Joan M. Katz, Anchorage, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

BURKE, Justice.

In this case, the City of Anchorage appeals the superior court's award of $5,151.41 in costs and attorney's fees to two of the appellees, David and Janet McCabe.

On January 15, 1975, appellee Edward Carlstrom petitioned the G.A.A.B. Planning and Zoning Commission for a special exception to the zoning ordinance for construction of a Planned Unit Development (hereinafter P.U.D.).[1] After holding a public hearing on the matter, the Planning and Zoning Commission granted Carlstrom permission to build two eleven-story buildings at the northwest corner of West 13th Avenue and "I" Street. The McCabes, homeowners in the neighborhood of the proposed P.U.D., appealed this decision to the Anchorage City Council, which also sits as the Board of Adjustment for the City of Anchorage,[2] and this appeal was denied.

The McCabes appealed the City Council's decision to the superior court, pursuant to AS 29.33.130,[3] and named the City Council and Carlstrom as appellees. The McCabes presented two arguments to the court: (1) that the City had abused its discretion in upholding the Planning and Zoning Commission's decision and approving a project which did not meet the G.A.A.B. ordinance's requirement that P.U.D.'s "enhance and preserve the value, spirit, character and integrity of the surrounding areas";[4] and (2) that this G.A.A.B. ordinance regulating P.U.D.'s was, itself, unconstitutionally vague and overbroad and constituted an invalid delegation of authority. The superior court agreed with this second line of

1. Construction of P.U.D.'s was permitted only by special exception to the zoning ordinances. G.A.A.B. Ordinance § 21.05.020(B)(57) defined P.U.D.:

   PLANNED UNIT DEVELOPMENT. A group or combination of certain specified residential, commercial or industrial uses developed as a functional and integral unit in a district or districts where some or all of the uses might not otherwise be permitted. Planned unit developments are permitted only by special exception.

2. AS 29.33.110 and G.A.A.B. Ordinance § 21.-05.080(F) established a bifurcated system for hearing appeals from the Planning and Zoning Commission. The Borough Assembly was the board of adjustment for areas outside the city. The Anchorage City Council was the board of adjustment for the area within the former city boundaries.

3. AS 29.33.130 provides:

   *Judicial review.* (a) The assembly shall provide by ordinance for appeals from the board of adjustment to the superior court.

   (b) A municipal officer, a taxpayer, or a person, jointly or severally aggrieved, may appeal an action of the board to the superior court by filing with the borough clerk within the time fixed by ordinance, a notice of appeal specifying grounds. When the notice of appeal is filed, the board shall at once transmit to the superior court clerk copies of all the papers constituting the record in the case.

   (c) An appeal from the board of adjustment stays enforcement proceedings unless the court issues an enforcement order based on a certificate of imminent peril to life or property made by the board.

   (d) The appeal is heard upon the record by the superior court, and the court may reverse or affirm, wholly or partly, the decision appealed from.

   (e) Issues in proceedings under this section have preference over all other civil actions and proceedings. An appeal lies from the decision of the superior court as in other civil cases.

4. G.A.A.B. Ordinance § 21.05.060(M)(9)(a) provides:

   It is the intent of the Special Exception provision for a planned unit development to allow certain specified residential, commercial or industrial uses, or combinations thereof, to be developed as a functional and integral unit in a district or districts where some or all of the uses might not otherwise be permitted. The planned unit development concept provides a flexibility in the zoning ordinance which attempts to meet the needs of a growing urban area by encouraging a more creative approach in the development of land while at the same time enhancing and preserving the value, spirit, character and integrity of surrounding areas which have or are developing under conventional district regulations.

reasoning and, holding the P.U.D. ordinance to be invalid, reversed the City Council's decision. Throughout the proceedings in superior court, the City's attorney chose not to brief and argue the merits of the case; Carlstrom's attorney did take an active role in the case.

As prevailing parties, the McCabes moved for attorney's fees in the amount of $4,612.50, calculated at 92¼ hours at $50 per hour. In support of this request, the McCabes submitted an affidavit of their attorney which attested to the amount of work she had performed on the case. Both the City and Carlstrom filed memoranda in opposition to the award of fees, each party arguing that it should not be liable for any fees awarded to the McCabes. Carlstrom and the City also contended that since the McCabes were litigating a public interest issue, they were not entitled to an award of fees at all. The superior court awarded the full amount of fees and costs requested by the McCabes, concluding that the City was the proper party to be charged.

The City appeals the superior court's award of fees on three grounds, contending:

1. That the McCabes are not entitled to any attorney's fees, since they were litigating a public interest issue;

2. That since the City was only a nominal party in the appeal to the superior court and had no interest in the outcome of the case, it should not be liable for any attorney's fees to which the McCabes may be entitled;

3. That the superior court abused its discretion in awarding the full amount of attorney's fees requested by the McCabes.

## STANDARD OF REVIEW

Rule 82(a)(1), Alaska Rules of Civil Procedure, provides that in cases where there is no monetary recovery, "attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount." This court has recognized that the trial judge has wide discretion in awarding fees to a prevailing party. As we recently stated in *Alaska Placer Company v. Lee*, 553 P.2d 54 (Alaska 1976):

> We will interfere only where the trial court's determination as to attorney's fees appears to be 'manifestly unreasonable.' (footnote omitted) 553 P.2d at 63

## PUBLIC INTEREST NATURE OF THE CASE

We turn first to the question of whether the McCabes were entitled to any award of attorney's fees. Both the City and the McCabes have characterized this case as a suit involving issues of public interest, the constitutionality of the P.U.D. ordinance having been litigated in the superior court. This court has previously held that "it is an abuse of discretion to award attorney's fees *against* a losing party who has in good faith raised a question of genuine public interest before the courts." *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974) (emphasis added). *Accord, Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1227 (Alaska 1975). Although in Alaska costs and attorney's fees are normally awarded to the prevailing party,[5] the City now argues that if a plain-

---

5. Rule 82(a), Alaska Rules of Civil Procedure provides:

(a) *Allowance to Prevailing Party as Costs.*

(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

ATTORNEY'S FEES IN AVERAGE CASES

|  |  | Contested | Without Trial | Non-Contested |
|---|---|---|---|---|
| First | $2,000 | 25% | 20% | 15% |
| Next | $3,000 | 20% | 15% | 12.5% |
| Next | $5,000 | 15% | 12.5% | 10% |
| Over | $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

tiff does not risk being charged attorney's fees by virtue of the public interest nature of the suit, he should not be able to benefit from Rule 82 if he prevails.

The City supports its contention with a policy argument that to allow a public interest plaintiff to collect attorney's fees will increase the number of public interest suits and encourage attempted resolution of political disputes through the judicial process. The City also contends that plaintiffs in all civil actions will be motivated to label their suits as public interest litigation in order to be assured of compensation in the case of victory and immunity in the case of defeat. We are not persuaded by these arguments, since they are inconsistent with the policy considerations behind *Gilbert* and conflict with the trend to award attorney's fees to public interest plaintiffs in the federal courts.

■ The *Gilbert* public interest exception to Rule 82 is designed to encourage plaintiffs to bring issues of public interest to the courts. In holding that as a matter of sound policy attorney's fees should not be assessed against public interest plaintiffs, we relied in *Gilbert* on the appellant's argument "that awarding fees in this type of controversy will deter citizens from litigating questions of general public concern for fear of incurring the expense of the other party's attorney's fees."[6] Adoption of the City's contention that public interest plaintiffs should not be awarded attorney's fees would be inconsistent with the above stated policy.

Although all jurisdictions other than Alaska have adopted the "American rule"

(2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

(3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

**6.** 526 P.2d at 1136.

**7.** Although the United States Supreme Court recently resisted in *Alyeska Pipeline Service v.*

that each party to a legal dispute is responsible for his own attorney's fees, regardless of the ultimate disposition of the suit, awards of attorney's fees to public interest plaintiffs have long been an exception to that general no-fee rule. The policy behind the award of attorney's fees to "private attorneys general" was first articulated by the United States Supreme Court in *Newman v. Piggie· Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). In that case, the court held that a plaintiff who was successful in bringing a suit under Title II of the Civil Rights Act of 1964, which prohibits discrimination in restaurants, should ordinarily recover attorney's fees. The basis for this holding was the same policy articulated by this court in *Gilbert*—to encourage plaintiffs to raise issues of public interest by removing the awesome financial burden of such a suit.

When a plaintiff brings an action under [Title II], he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general', vindicating a policy that congress considered of the highest priority. *If successful plaintiffs were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts.* (emphasis added) 390 U.S. at 402, 88 S.Ct. at 966. (footnote omitted)

Thus, if courts in jurisdictions which do not ordinarily allow the award of attorney's fees to prevailing parties make an exception for successful public interest plaintiffs,[7] certainly in a state where com-

*Wilderness Soc.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) the opportunity to expand the "private attorney general" doctrine to the award of fees to all public interest plaintiffs, the court did not retreat from the policy it articulated in *Piggie Park*. Rather it concluded that the "American rule" is grounded in statute and that the courts may not award counsel fees unless they determine that Congress so intended. Since Rule 82 not only specifically authorizes but requires the award of attorney's fees to the prevailing party in civil cases, the Court's reasoning in *Alyeska* would not be applicable to the instant case.

pensation is the rule, the contention that public interest plaintiffs should be the only successful plaintiffs not entitled to attorney's fees has no merit.

With regard to the City's warning that all plaintiffs will now be prompted to characterize their cases as public interest litigation, if the *Gilbert* case did not cause such characterization, affirmance of the award in this case will not do so. Since the award of fees to the prevailing party is the general rule, compensation of a public interest plaintiff will not cause plaintiffs to fabricate public interest issues. If anything were to motivate a plaintiff to falsely label the nature of his case, it would be the impunity assured to public interest plaintiffs by *Gilbert.* Furthermore, criteria for determining what constitutes "public interest" litigation have been delineated. In *La Raza Unida v. Volpe,* 57 F.R.D. 94 (N.D.Cal. 1972), the court held that an action by private citizens to enjoin construction of a state highway project for failure to comply with Federal statutes was public interest litigation because of the presence of three factors: "(1) the effectuation of strong public policies; (2) the fact that numerous people received benefits from plaintiffs' litigation success; (3) the fact that only a private party could have been expected to bring this action." 57 F.R.D. at 101; *accord,* Nussbaum, *Attorney's Fees in Public Interest Litigation,* 48 N.Y.U.L.Rev. 301, 304–305 (1973).

■ The policy of encouraging public interest litigants, articulated by the court in *Gilbert,* supports an award of attorney's fees to the prevailing plaintiffs in this and all other public interest cases.

## AWARD OF FEES AGAINST THE CITY

The City's next contention in this appeal is that even if the McCabes were entitled to an award of attorney's fees, the City was not the proper party to be charged with this award. In this argument, the City has raised several issues: (a) that it had no capacity to be charged with fees since it had insufficient party status or legal interest in the case; (b) that the Borough was

an indispensable party to the case and was the only municipal body capable of being charged with the fees; and (c) that Carlstrom should have been charged with the full amount or at least a portion of the fees.

### a. Capacity to be assessed

■ In arguing that the City was not the proper party to be assessed for attorney's fees, the City first contends that it had no capacity to be charged with the awards. It bases its lack of capacity argument on the contention that it had no legal interest in the case. First, it claims that it was disinterested in the outcome of the case since its role was that of a "quasi-judicial" body and its function was "closely analogous to the role of the Superior Court in this case." It thus seems to argue that it never should have been named as a party in the McCabe's appeal to the superior court at all. In support of this argument, the City cites *State v. Bd. of Zon. Adjust. of New Orleans,* 197 So.2d 691 (La.App.1967), in which plaintiffs, attempting to appeal the Board of Adjustment's decision to grant a variance, named only the Board and City as defendants. The trial court's decision to dismiss the case for failure to join the owners of the lots in question was based on the Board's quasi-judicial status and its resultant lack of capacity to be sued.

> The Board is a quasi-judicial body and can have no legal interest in the outcome of the case. *It can neither sue nor be sued nor can it appeal from a Court's reversal of its decision for the reason that it has no legal interest in the outcome of the Court's review thereof.* 197 So.2d at 694 (emphasis added)

However, in this jurisdiction, the Board of Adjustment has in the past been afforded full party status in appeals of its decisions. When, in *Munroe v. City Council for City of Anchorage,* 545 P.2d 165, *reh'g granted and opinion modified,* 547 P.2d 839 (Alaska 1976), builders appealed the Board of Adjustment's decision to deny a special exception to the zoning ordinance for construction of a P.U.D., the superior court upheld the Board's decision, awarding it

$1,500 in attorney's fees. If the City Council could qualify as the prevailing party entitled to attorney's fees in that case, it was capable of full party status in this case.

Furthermore, the City failed to object to its capacity to be sued in this action. Rule 9(a) of the Alaska Rules of Civil Procedure provides in part:

> When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

We recently relied on this provision in holding that "failure to raise the issue of capacity to sue results in waiver of the defense." *King v. Petroleum Services Corporation,* 536 P.2d 116, 118 (Alaska 1975). The failure to raise the issue of lack of capacity *to be sued* has the same waiver effect, and the City has thus waived this defense.

### b.   Failure to join the Borough

■   The City next argues that since the superior court's decision on the merits of the case turned entirely on the invalidity of the G.A.A.B. ordinance and not on an abuse of discretion by the City Board of Adjustment, the Borough was an indispensable party to the case. Although the City never objected during trial to the plaintiff's failure to join the Borough, this court may, in its discretion, review this issue for the first time on appeal. *Padgett v. Theus,* 484 P.2d 697, 700 (Alaska 1971).

■   We have defined an indispensable party as "one whose interest in the controversy before the court is such that the court cannot render an equitable judgment without having jurisdiction over such party." *State, Department of Highways v. Crosby,* 410 P.2d 724, 725 (Alaska 1966). In determining at the trial level whether a party is indispensable, the court must balance the danger that judgments will lack finality against the desirability of having some determination of a dispute. Since the lower court was able to dispose of the merits of this case in an equitable manner, without the presence of the Borough, and there is no possibility that any further litigation of the matter will ensue, the Borough was not an indispensable party under *Crosby* standards.

■   Even if at the trial level the Borough could have qualified as an indispensable party to the action, in reviewing the issue for the first time, we must consider the additional factor of whether failure to overturn the judgment will substantially prejudice the interest of the party who was not named. *Padgett v. Theus,* 484 P.2d at 702. In this case, the G.A.A.B.'s interests will not be affected by this court's affirmance of the judgment of attorney's fees against the City, since subsequent to the commencement of this litigation, the G.A.A.B. and the City of Anchorage merged to form the present Municipality of Anchorage.

### c.   Carlstrom's liability for fees

■   The City also argues that appellee Carlstrom was the real party at interest in this case and should have been liable for all or at least a portion of the fees. In support of this contention, the City cites *First National Bank of Alaska v. Enzler,* 537 P.2d 517 (Alaska 1975), in which we upheld an award of attorney's fees against a party not named in the suit. In that case, the trial court perceived the bank as the "true prosecutor of the action—in effect the real plaintiff," and awarded fees against it on the grounds that "[o]f the parties appearing, only the bank stood to profit by a judgment in favor of the named plaintiff." *Id.* 537 P.2d at 525. The nominal plaintiff, a trustee, was not charged with any portion of the fees awarded since it was not the real party at interest. In the instant case, however, Carlstrom was not the only party who stood to profit from the superior court's affirmance of the grant of a special exception; the Board of Adjustment had an interest in seeing its decision upheld—that of protecting the public interest in having zon-

ing ordinances enforced—and was therefore more than a nominal party to the action.[8]

The superior court's exclusion of Carlstrom from any obligation to pay attorney's fees appears to have been based in part on this court's decision in *Girves v. Kenai Peninsula Borough,* 536 P.2d 1221 (Alaska 1975). In that case we held that it was unfair to impose attorney's fees on a plaintiff who had relied upon an attorney general's opinion which was held to be invalid. In the case before us now, Carlstrom relied on a P.U.D. ordinance which was found to be invalid, and to assess him for fees would also be unfair. In light of the *Girves* case, it is clear that the superior court did not abuse its discretion by charging only the City with the judgment of fees.

## AWARD OF FULL AMOUNT OF FEES INCURRED

At the time that the superior court overturned the Board of Adjustment's decision, the McCabes moved for attorney's fees in the amount of $4,612.50. This requested amount was calculated at 92¼ hours at $50 per hour and, according to the attorney's accompanying affidavit, represented compensation for the total amount of work she performed in the case. Judge Carlson granted the entire amount requested.

The City argues that if the McCabes were to be compensated at all, they should only have been partially compensated. The McCabes respond by citing *Palfy v. Rice,* 473 P.2d 606 (Alaska 1970), for the proposition that the court may reasonably award attorney's fees which are commensurate with the actual amount of legal work performed by the attorney in the case. This interpretation of *Palfy* is presumably based on our consideration of the amount of legal work involved in that case in deciding that the award of attorney's fees was too low.

However, it is unconvincing in light of this court's recent decisions in *Malvo v. Penney,* 512 P.2d 575 (Alaska 1973) and *Continental Insurance Company v. United States Fidelity and Guaranty Company,* 552 P.2d 1122 (Alaska 1976).

In *Malvo,* we held that the trial court abused its discretion by automatically awarding the full amount of attorney's fees incurred by the prevailing party. This holding was based on the underlying purpose of Rule 82 "to partially compensate a prevailing party for the costs and fees incurred where such compensation is justified and not to penalize a party for litigating a [claim in] good faith." 512 P.2d at 588. In *Continental,* we extended the *Malvo* partial compensation rule to cases in which the award of full fees was not automatic but instead was made after the trial judge considered the progress of the case. We held in *Continental* that since the losing party's claims were not "frivolous, vexatious, or devoid of good faith" and did not "in any way unreasonably [prolong] the litigation," the award of full attorney's fees must be set aside.[9] In the instant case, the City was litigating a good faith claim in attempting to uphold the G.A.A.B. ordinance regulating P.U.D.s, and, were it not for the public interest nature of this case, an award of full attorney's fees would ordinarily be set aside under the reasoning of *Continental.* We find, however, that requiring a court to award an amount less than that which constitutes full compensation is contrary to the rationale of decisions in *Gilbert v. State, supra,* and *Girves v. Kenai Peninsula Borough, supra.* In those cases, we held that since it was not the purpose of Rule 82 to penalize plaintiffs who in good faith litigate important public questions, such plaintiffs, even if unsuccessful, should not be charged with attorney's fees. It follows that the

---

8. *See Board of Adjustment of City of Fort Worth v. Stovall,* 147 Tex. 366, 216 S.W.2d 171 (Tex.1949) in which the court, quoting from *Rommell v. Walsh,* 127 Conn. 16, 15 A.2d 6 (Conn.1940), stated:

> [T]he function of protecting and advancing the public interest in establishing and maintaining a proper and adequate zoning system

is entrusted to certain boards, who, in that respect, exercise a large discretion. . . . [B]ecause of the function they perform they should represent the public interests entrusted to them in appeals taken from their decisions. 216 S.W.2d at 174.

9. 552 P.2d at 1129.

successful public interest plaintiff, acting as a "private attorney general," should not be penalized by Rule 82 by failing to receive full compensation for the costs of litigating issues of public importance. We hold, therefore, that the trial court may, in its discretion, award full attorney's fees to public interest plaintiffs. The award of full attorney's fees against the City is thus AFFIRMED.

RABINOWITZ, Justice, with whom ERWIN, Justice, joins concurring.

While I agree with the court's disposition of this matter, I disagree with the court's treatment of the "capacity to be assessed" issue. The majority reasons that since the Board of Adjustment was accorded full party status in *Munroe v. City Council for City of Anchorage*, 545 P.2d 165, *reh'g granted and opinion modified*, 547 P.2d 839 (Alaska 1976), it is capable of full party status in the instant case and has the capacity to be assessed attorney's fees. I think it is necessary to examine those factors which set a zoning board apart from other quasi-judicial administrative boards and thus compel the decision that the zoning board in the case at bar should be assessed attorney's fees.

Many quasi-judicial administrative boards, such as the Workmen's Compensation Board, are charged with adjudicating the rights of individual parties according to the terms of administrative law. However, the zoning board's duties go far beyond determining the relative rights of the parties in quasi-judicial proceedings; the zoning board is granted a large degree of discretion to be exercised in the public interest. That discretion is particularly obvious in cases such as the one at bar where a party is seeking a variance or special exception to a zoning ordinance.[1] The exercise of the zoning board's discretionary authority may seemingly involve only a few individuals, but the impact of its decision may be felt by the entire community. In explaining its decision that the zoning board involved had sufficient party status to maintain an appeal from a lower court reversal of its decision, the Connecticut Supreme Court stated:

In some appeals from administrative boards the question at issue is of consequence only to certain parties who will be directly affected, as, for example, where the public utilities commission is called upon to apportion between a municipality and a railway company the cost of the construction of a highway bridge over a railway track. . . . In other cases, however, there is a definite public interest to be protected. This is true, for instance, of many orders of the public utilities commission, and is particularly true with respect to zoning regulations. . . . While [zoning] boards have ordinarily no corporate existence as such but are merely agencies of the municipality, and while they have no direct interest in this litigation, it would be a logical conclusion that because of the function they perform they should represent the public interest entrusted to them in ap-

---

1. In explaining the difference between the discretion exercised by an administrative agency in promulgating rules and adjudicating rights, one commentator has noted that when an agency is adjudicating rights, the discretionary power is more subtle.

[A]gencies engaged in adjudication may be enabled to exercise their discretionary powers to reach results which go far beyond, and which may even be quite at odds with the underlying legislative purpose. It is not meant to imply that agencies always stretch the legislative fabric. However, the freedom to exercise discretion in deciding individual cases on a basis of *ad hoc* adjudication may

enable them at times to read new and unanticipated meanings into legislative language, when the agency heads feel that the accomplishment of their broad social purposes will be furthered thereby.

1. F. Cooper, State Administrative Law 33 (1965).

The potential for variance from the stated purpose is even greater in situations like the one at bar where a board is being requested to grant special exceptions to particular parties. In such circumstances it is appropriate to grant the board full party status and, when its decision is not upheld, to grant an award of attorney's fees against it.

peals taken from their decisions.[2] (citation omitted)

Representing the public interest in appeals from its decisions may often imply justifying its decision. Because of the extent of its discretion, the zoning board has a far greater interest in attempting to uphold its decision than does a quasi-judicial administrative body like the Workmen's Compensation Board and thus should be granted full party status. Given these factors, I conclude that it is appropriate for the zoning board to be accorded full party status and assessed attorney's fees in the instant case.

BOOCHEVER, Chief Justice, dissenting.

I do not believe that attorney's fees should have been awarded against the City in this matter. When a city or administrative body actively participates in an appeal from its decision, it should be regarded as a party for the purpose of awarding fees. Where, however, it is a mere nominal participant, attorney's fees should not be awarded either for or against it.[1]

At the outset, the City of Anchorage heard the appeal from the Planning and Zoning Commission in a quasi-judicial capacity. On the subsequent appeal to the superior court, it was properly named as a party. If it had deemed that the public interest required it to advocate a particular position, the City could have actively participated in the appeal.[2] Here, however, the City apparently decided that there were no significant municipal interests justifying opposition to the appeal. The only party who actively disputed the contentions raised by the McCabes was Mr. Carlstrom, who was primarily interested in the construction of the planned unit development. Under these circumstances, he was the one who lost on the appeal; and, in my opinion, the costs and attorney's fees should have accordingly been awarded against him rather than the City.

I also differ from the majority in regard to the court's role in public interest litigation. The opinion seems to take the position that such litigation should be actively encouraged. In my view, our function is not to encourage litigation of any sort. On the other hand, I believe that we should strive to prevent our courts from becoming inaccessible, as a practical matter, to those who seek to vindicate rights shared by the public. This concern is similar to that evinced by the Supreme Court in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 81 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The Court noted that few parties would be in a position to advance the public interest if successful plaintiffs were routinely forced to bear their own attorney's fees. For similar reasons, I agree that in appropriate cases, it is proper to deny an award of fees against an unsuccessful plaintiff.[3] Moreover, where a sufficient public interest is involved, it may be appropriate to award full attorney's fees to a successful plaintiff to the extent that they are reasonable.

In any "public interest" litigation, the plaintiff must also have some direct and immediate interest.[4] Moreover, in most litigation, a party can usually contend that his position represents some public interest. For example, a plaintiff in an automobile collision case can say that he is promoting the public interest in preventing negligent driving. Although specific standards for

---

**2.** *Rommell v. Walsh*, 127 Conn. 16, 15 A.2d 6, 9 (1940). *Accord, Zimmerman v. Kramer*, 29 Misc.2d 413, 217 N.Y.S.2d 438 (Sup.Ct.1961); *Board of Adjustment v. Stovall*, 147 Tex. 366, 216 S.W.2d 171 (1949). *See generally Simpson v. Kennedy*, 327 A.2d 763 (Del.Super.1974); *Boyd & Usher Transport v. Southern Tank Lines, Inc.*, 320 S.W.2d 120 (Ky.1959).

**1.** For example, it is customary not to assess fees against the Alaska Workmen's Compensation Board when it does not actively participate in appeals from its awards although it is named as a party. *See, e. g., Alaska Workmen's Com-*

*pensation Board v. Marsh*, 550 P.2d 805 (Alaska 1976); *Vetter v. Alaska Workmen's Compensation Board*, 524 P.2d 264 (Alaska 1974).

**2.** *Cf. Munroe v. City Council for the City of Anchorage*, 545 P.2d 165, *opn. on rehearing*, 547 P.2d 839 (Alaska 1976).

**3.** *See Gilbert v. State*, 526 P.2d 1131 (Alaska 1974).

**4.** *Sierra Club v. Morton*, 405 U.S. 727, 732–36, 92 S.Ct. 1361, 31 L.Ed.2d 636, 641–42 (1972).

determining whether the requisite public interest exists have not been articulated, a few general principles do emerge from those cases where the issue has been raised.

Where the sums at stake in the controversy are sufficiently large to prompt suit regardless of the public interest, an award of attorney's fees against the losing party has been found reasonable. In such cases, the concern that fear of expenses will significantly deter citizens from litigating questions of general interest to the community is inapplicable. *Mobil Oil Corp. v. Local Boundary Comm.*, 518 P.2d 92, 109 (Alaska 1974). Similarly, questions which primarily affect the rights of the parties before the court lack the requisite public character to prohibit an award, even if some public or constitutional issues are involved. *Munroe v. City Council for the City of Anchorage, supra* (challenge to denial of application for special exception to applicable zoning ordinances); *Kelly Supply Co., Inc. v. City of Anchorage*, 516 P.2d 1206, 1211 (Alaska 1973) (challenge to refusal to permit nonconforming use).

In each case, the court must weigh the private motivation for the lawsuit against the extent of the public interest involved. Here, as owners of property adjoining the proposed development, the McCabes had a significant personal interest. While their interest was doubtlessly shared by others in the neighborhood, and to some extent generally by others in Anchorage, it hardly manifests the same degree of public importance as the residency requirement for candidates for political office,[5] prohibiting racial discrimination in restaurants[6] or enforcing compliance with federal statutes in construction of highways.[7] As in *Munroe v. City Council for the City of Anchorage*, the private property interests of the McCabes appear the paramount motivation for the lawsuit, while the public interest seems of somewhat marginal significance. Accordingly, I would remand for a redetermina-

tion of reasonable attorney's fees sufficient to partially compensate plaintiff.[8]

---

5. *Gilbert, supra.*

6. *Newman v. Piggie Park Enterprises, Inc., supra.*

7. *La Raya Unida v. Volpe*, 57 F.R.D. 94 (N.D. Cal.1972).

8. *Malvo v. J. C. Penney Co., Inc.*, 512 P.2d 575 (Alaska 1973).