Lowell THOMAS, Jr., Lieutenant Governor of the State of Alaska, Appellant,

Michael F. Beirne and The New Homesteaders, Intervenor-Appellants,

v.

Edgar BAILEY, Wesley M. Howe, Patrick L. Dobey, James L. Pitts, Gerald Ganopole, Molly Crenshaw, Eric Olson, Justine Beryl Johnson, and Trustees For Alaska, Appellees.

No. 4204.

Supreme Court of Alaska.

May 16, 1980.

G. Thomas Koester, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Wilson A. Rice, Anchorage, for appellees.

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, Senior Justice.

## OPINION ON COSTS AND FEES

BOOCHEVER, Chief Justice.

We are here confronted by another facet of one of Alaska's most litigated issues, the award of attorney's fees.[1] Trustees for Alaska brought suit against Lowell Thomas, Lieutenant Governor for the State of Alaska, attacking the constitutionality of an initiative enacted by the voters as "The Alaska Homestead Act." After the superior court ruled that the initiative was invalid, the case was appealed to us. We held the initiative to be invalid for the reason that it was used to make an appropriation in violation of article XI, section 7, of the Constitution of the State of Alaska.[2]

Trustees filed a motion requesting an award of attorney's fees on appeal in the amount of $8,935.00[3] to be paid by the State of Alaska. The requested fee was based on an hourly rate of $75.00 multiplied by a factor of 2.5. The state did not oppose the award of a fee but contended that it should be based on $40.00 an hour, the rate then used for compensating attorneys appointed to represent indigents, or, alternatively, no more than the $75.00 an hour rate. By order of May 24, 1979, we awarded a fee of $3,581.00 based on 47.75 hours of work on the appeal at the $75.00 rate and indicated that an opinion would follow.

Civil Rule 82 provides for the allowance of attorney's fees to the prevailing party in the trial court.[4] We have held that the purpose of the rule is to compensate the prevailing party partially for costs and fees incurred when such compensation is justified.[5] We have carved certain exceptions

1. See Cooper v. Carlson, 511 P.2d 1305, 1306 n.1 (Alaska 1973), for cases involving attorney's fee questions prior to the date of that opinion.

2. Thomas v. Bailey, 595 P.2d 1 (Alaska 1979). Initially, we ordered that the initiative be submitted to the electorate as we were unable to decide properly the issues involved in the short time prior to the scheduled balloting. Our decision that the initiative was unconstitutional was rendered after the initiative's approval at the balloting.

3. Although the motion was limited to attorney's fees on appeal, the supporting brief also requested fees for services in the superior court in the amount of $32,797.00. We did not pass on the question of allowance of fees in the superior court.

4. Civil Rule 82(a) provides:
(a) Allowance to Prevailing Party as Costs.
(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

ATTORNEY'S FEES IN AVERAGE CASES

| | Contested | Without Trial | Non-Contested |
|---|---|---|---|
| First $2,000 | 25% | 20% | 15% |
| Next $3,000 | 20% | 15% | 12.5% |
| Next $5,000 | 15% | 12.5% | 10% |
| Over $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion in a reasonable amount.
(2) In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.
(3) The allowance of attorney's fees by the court in conformance with the foregoing schedule is not to be construed as fixing the fees between attorney and client.

5. Malvo v. J. C. Penney Co., 512 P.2d 575 (Alaska 1973); Continental Ins. Co. v. United

from that policy in "public interest" cases. In *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974), a potential candidate for state senator sought a declaration that a three-year residency in the state and one year in the election district violated equal protection rights. Although upholding the residency requirements, we held it to be an abuse of discretion to award attorney's fees against the losing party who had in good faith raised a question of genuine public interest.[6]

In *City of Anchorage v. McCabe*, 568 P.2d 986 (Alaska 1977), homeowners appealed a decision of the city council, sitting as a board of adjustment, upholding the grant of an exception from the zoning ordinance for a major planned unit development. Because the suit was considered to be one of public interest,[7] the trial court awarded full attorney's fees to the prevailing party based on a reasonable hourly rate. In affirming, we stated:

> We find, however, that requiring a court to award an amount less than that which constitutes full compensation is contrary to the rationale of decisions in *Gilbert v. State, supra*, and *Girves v. Kenai Peninsula Borough, supra*. In those cases, we held that since it was not the purpose of Rule 82 to penalize plaintiffs who in good faith litigate important public questions,

such plaintiffs, even if unsuccessful, should not be charged with attorney's fees. It follows that the successful public interest plaintiff, acting as a "private attorney general," should not be penalized by Rule 82 by failing to receive full compensation for the costs of litigating issues of public importance. We hold, therefore, that the trial court may, in its discretion, award full attorney's fees to public interest plaintiffs.[8]

Attorney's fees on appeal are governed by Appellate Rule 29(d), which states:

> Where costs are allowed in this court, attorney's fees may also be allowed in an amount to be determined by the court. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.

 In determining the amounts of attorney's fees on appeal in public interest litigation, we believe that the same considerations are applicable as at the trial level. When a sufficient public interest is involved, it is therefore appropriate to award full attorney's fees on appeal to a successful public interest litigant. At times, such a decision may depend upon a balancing of the public and private interests involved in pressing the litigation.[9]

States Fidelity & Guaranty Co., 552 P.2d 1122 (Alaska 1976).

6. *See also Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1227 (Alaska 1975).

7. In determining the public interest motive of litigation, we referred to the criteria set forth in *La Raza Unida v. Volpe*, 57 F.R.D. 94, 101 (N.D.Cal.1972):
 (1) the effectuation of strong public policies;
 (2) the fact that numerous people received benefits from plaintiffs' litigation success;
 (3) the fact that only a private party could have been expected to bring this action.
 *Accord*, Nussbaum, *Attorney's Fees in Public Interest Litigation*, 48 N.Y.U.L.Rev. 301, 304–05 (1973).

8. *City of Anchorage v. McCabe*, 568 P.2d 986, 993–94 (Alaska 1977).

9. We have utilized such a balancing test in determining whether attorney's fees should be assessed against an unsuccessful party claim-

ing to have litigated a question of public interest. Where the sums at stake in the controversy are sufficiently large to prompt suit regardless of the public interest, an award of attorney's fees against the losing party has been found reasonable. In such cases, the concern that fear or expense will significantly deter citizens from litigating questions of general interest to the community is inapplicable. *Mobil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 104 (Alaska 1974). Similarly, questions which primarily affect the private rights of the parties before the court lack the requisite public character to prohibit an award, even if some public or constitutional issues are involved. *Munroe v. City Council*, 545 P.2d 165, 171–72, *reh. granted & opn. modified*, 547 P.2d 839 (Alaska 1976) (challenge to denial of application for special exception to zoning ordinances); *Kelly Supply Co. v. City of Anchorage*, 516 P.2d 1206, 1211 (Alaska 1973) (challenge to refusal to permit nonconforming use).

There is no dispute but that Trustees was a public interest plaintiff. In fact, unlike the plaintiffs in the *McCabe* case, it had no direct financial interest in the outcome of the litigation. Trustees, however, seeks not only a full allowance for reasonable attorney's fees in the appeal, but an enhancement of that amount based on the benefit bestowed by multiplying the hourly rate by a factor of 2.5.

If the fee is based on the benefit bestowed, the litigation could be considered as being converted from the public interest to the interest of the private litigant seeking a contingent award. Moreover, Trustees' argument that the litigation involved a benefit to the public in the amount of the land value involved misses the mark. Our decision holding the initiative invalid [10] made no determination of whether the grant of lands to private individuals would have adversely affected the public interest. The public interest served by the litigation was to construe the constitutional prohibition against the use of the initiative for appropriations.[11] The result is not readily convertible into a monetary sum so that it would be difficult, if not impossible, to base the fee on the "benefit bestowed." While the importance of the issue litigated may be a consideration in determination of the fee to be allowed, it cannot serve as the basis for a percentage award under these circumstances.

In arguing for an enhanced fee, Trustees contends that we should apply criteria utilized in primarily private interest litigation such as private anti-trust actions.[12] Obviously, the considerations applicable when vindicating a plaintiff's commercial rights against a wrongdoing defendant are different from those involved when a plaintiff brings a suit primarily in the interest of the public. In the former type of litigation, substantial monetary benefits are often obtained for individual plaintiffs, and deterrence of wrongdoing is a legitimate policy.[13] In the present case, no monetary benefits were obtained for individuals and the exercise of a discretionary function by the lieutenant governor on a close constitutional question involves no wrongdoing.

The principal case cited by the appellee to support an enhanced award by applying a multiple of the reasonable fee is *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). *Lindy* involved an action by attorneys who had settled a class action anti-trust suit. The attorneys sought compensation for members of the class who were eligible to participate in the settlement fund, but who had not agreed to pay the attorneys prior to the settlement as other members of the class had done. In those circumstances, where the class mem-

**10.** *Thomas v. Bailey*, 595 P.2d 1 (Alaska 1979).

**11.** The Alaska Constitution, article XI, section 7, states in part that the power of initiative "shall not be used to . . . make or repeal appropriations."

**12.** Trustees refers to the criteria used in *Trans World Airlines, Inc. v. Hughes*, 312 F.Supp. 478, 480 (S.D.N.Y.1970), *modified and aff'd*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Arenson v. Board of Trade*, 372 F.Supp. 1349, 1351 (N.D.Ill.1974); and *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 245 F.Supp. 258, 302 (M.D.Pa.1965), *aff'd in part, rev'd in part*, 377 F.2d 776 (3d Cir. 1967), *aff'd in part, rev'd in part*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). The *Hanover* court specified some of the factors:

(1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government, (2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel, (3) time and labor spent, (4) magnitude and complexity of the litigation, (5) responsibility undertaken, (6) the amount recovered, (7) the knowledge the court has of the conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial, (8) what it would be reasonable for counsel to charge a victorious plaintiff.

**13.** Although in this country, other than in Alaska, attorney's fees are not awarded as a matter of course to the prevailing party, courts have long awarded fees to successful plaintiffs in three main categories: common fund cases, shareholder derivative suits and improper conduct cases. Nussbaum, *Attorney's Fees in Public Interest Litigation*, 48 N.Y.U.L.Rev. 301, 314–17 (1973).

bers who had not agreed to pay the attorneys would have received a substantial windfall as a benefit of the attorneys' work, the court was naturally inclined to award liberal attorneys' fees that would at least approximate what other members of the class had agreed to pay. While some of the considerations used in *Lindy* to enhance a fee above the basic hourly rate might be appropriate in an exceptional public interest case, it is not appropriate here. Unlike *Lindy*, reimbursement for fees is sought from the defendant, rather than a determination as to the amount members of a monetarily benefited class must pay counsel who successfully represented the class.

■ Factually more analogous is *Wyatt v. Stickney*, 344 F.Supp. 387 (M.D.Ala.1972), *modified, Wyatt v. Anderholt*, 503 F.2d 1305 (5th Cir. 1974), a class action brought to establish the right to treatment of patients involuntarily confined in Alabama mental institutions. No monetary award was at stake, but the public good was vindicated. In determining a reasonable fee, the district court considered the following factors:

> [T]he intricacy of the case and the difficulty of proof, the time reasonably expended in the preparation and trial of the case, the degree of competence displayed by the attorneys seeking compensation and the measure of success achieved by these attorneys. In public interest cases, courts also should consider the benefit inuring to the public, the personal hardships that bringing this kind of litigation causes plaintiffs and their lawyers, and the added responsibility of representing a class rather than only individual plaintiffs.

■ We agree generally with those criteria and the court's statement, "The above considerations, and others, militate in favor of the Court's granting plaintiffs' attorneys full compensation. . . ." We also agree with the court's comment that

[i]t is the duty of members of the legal profession to represent clients who are unable to pay for counsel and also to bring suits in the public interest. While lawyers who satisfy this ethical responsibility should be remunerated, their fees should not be exorbitant.

*Id.* at 410.

We have difficulty, however, with the result achieved by the district court. It based its award on compensation provided for attorneys appointed to represent indigent criminal defendants. Although the amounts of $30.00 per in-court hour and $20.00 per out-of-court hour were recognized as below normal levels of compensation in legal practice, it was considered adequate to prevent "undue financial sacrifice." *Id.*

This court has taken the position that litigation in behalf of the public interest should be encouraged.[14] To award fees to successful public interest litigants based on the hourly rate provided for representing indigents, which is well below normal compensation, would not only fail to encourage public interest litigation, but would act as a deterrent. We believe that,, generally, full compensation at a reasonable rate per hour will prove adequate to encourage appropriate public interest litigation.[15]

■ In determining a reasonable fee, many of the same factors used as a guide in determining the fee an attorney should charge a client are applicable. The Alaska Code of Professional Responsibility in DR 2–106(B) lists the following factors as guides in determining the reasonableness of a fee:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly.

---

14. *City of Anchorage v. McCabe*, 568 P.2d 986, 991 (Alaska 1977). Boochever, C. J., dissented, contending that litigation should not be encouraged, but that "we should strive to prevent our courts from becoming inaccessible, as a practical matter, to those who seek to vindicate rights shared by the public." *Id.* at 995.

15. *See* Berger, *Court Awarded Attorney's Fees: What is Reasonable?*, 126 U.Pa.L.Rev. 281, 310–15 (1977).

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitation imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.[16]

Here, the significant factors are the time and labor required, the novelty and difficulty of the questions involved, the skill required, the fee customarily charged in the locality for similar legal services, the result obtained, and the experience, reputation and ability of the lawyers performing the service. On balancing these considerations, we believe that compensation based on the hourly rate customarily charged in the locality by attorneys of similar experience is appropriate.

Nevertheless, in applying the elusive standard of "reasonableness" of a fee, it has been suggested that the contingency of securing compensation by being successful in the litigation should be considered.

First of all, contingency factors should be computed and applied case by case. In some cases, the probability of success is so great at the outset that no adjustment in a base award would be appropriate.

Courts in antitrust cases, for example, have recognized that the existence of a prior decree or judgment in a government suit so enhances the likelihood of later private success that the size of a "reasonable" fee would be less in that litigation than in a similar suit brought without the benefit of prior adjudication.

When, however, pertinent law is unclear at the outset of a case, or other factors decrease the likelihood of success on a claim, an upward adjustment in recompense will be warranted. That adjustment would be greatest in cases in which new law had to be forged or difficult burdens of proof met, to encourage the private bar to take claims which, though potentially meritorious, might for economic reasons go unrepresented. How high the contingency multiplier factor might rise is especially problematic, and is best left to judicial development. A multiplier factor of one hundred, even in a case in which the chances of victory were one in one hundred, would be patently unreasonable; even bringing such a claim could be considered frivolous or vexatious. On the other hand, a multiplier of two would seem clearly reasonable in a case whose odds might be computed as even.[17]

▪▪▪ While we can conceive of the possibility of appeals justifying enhanced compensation, we do not find this case to be an appropriate one. This suit was brought by a nonprofit corporation. The attorney was an employee of the corporation. The corporation is prohibited by Internal Revenue Service regulations from accepting compen-

16. One commentator has set forth the following factors to be utilized in determining the amount of attorney's fees to be awarded in public interest litigation:

It should be error for the trial judge to consider only the amount of the recovery. The other factors that should be taken into account are: the nature of the litigation; the novelty and difficulty of the questions involved; the skill required in the case; the skill and resourcefulness of the opposing counsel; the amount of time the attorney spent on the case; the attorney's age, skill and learning; his experience in the particular subject matter area; his standing in the legal community; the loss of employment for the attorney while working on the case; and the customary charges of the Bar for similar services.

Nussbaum, *Attorney's Fees in Public Interest Litigation*, 48 N.Y.U.L.Rev. 301, 336 (1973) (footnotes omitted).

17. Note, *Court Awarded Attorney's Fees and Equal Access to the Courts*, 122 U.Pa.L.Rev. 636, 710–11 (1974) (footnotes omitted). *See also Angoff v. Goldfine*, 270 F.2d 185, 189 (1st Cir. 1959).

sation from clients represented. The regulations do, however, allow the corporation to accept fees awarded by the court and paid by the opposing party, as long as not over fifty per cent of the firm's income comes from court-awarded fees, and the prospect of such fees is not a factor in determining which cases to accept. We have acknowledged that costs of litigation are minimized by the use of in-house counsel.[18] It is not contended that counsel was paid at the rate of $75.00 an hour for his services in this appeal. In all likelihood, counsel received compensation at a considerably lesser rate. Thus, payment at the $75.00 rate will substantially offset any contingency factor involved in the likelihood of being successful in the litigation. Moreover, while Trustees was represented by a skillful attorney, its major argument for holding the initiative unconstitutional was not relied on in the majority opinion. Trustees devoted little attention to the appropriation issue, which was found controlling in the decision.

The parties in this case do not dispute the number of hours reasonably applied to this appeal, nor the reasonable hourly rate for Alaskan attorneys of several years experience like the attorney representing Trustees. Based on 47.5 hours of work at the rate of $75.00, we have concluded that $3,581.00 is a reasonable allowance for attorney's fees incurred in the appeal to this court.

MATHEWS, J., not participating.

---

18. *Continental Ins. Co. v. United States Fidelity & Guaranty Co.*, 552 P.2d 1122, 1128 n. 18 (Alaska 1976).