Walter J. HICKEL, Governor of Alaska, State of Alaska, et al., Petitioners/Appellants,

v.

SOUTHEAST CONFERENCE, a non-profit Alaska corporation, et al., Respondents/Appellees.

SOUTHEAST CONFERENCE, a non-profit Alaska corporation, et al., Petitioners/Cross–Appellants,

v.

Walter J. HICKEL, Governor of Alaska, State of Alaska, et al., Respondents/Cross–Appellees.

Nos. S–5553, S–5573, S–5093 and S–5154.

Supreme Court of Alaska.

Feb. 18, 1994.

Stephen C. Slotnick, Asst. Atty. Gen., Charles Cole, Atty. Gen., Juneau, for Walter J. Hickel, Governor of Alaska, State of Alaska, et al.

Myra M. Munson and Donald J. Simon, Sonosky, Chambers, Sachse, Miller & Munson, Juneau, for Southeast Conference and Matanuska–Susitna Borough.

David C. Crosby, Wickwire, Greene, Crosby & Seward, Juneau, for Leavitt, et al.

Don Clocksin, Wagstaff, Pope & Clocksin, Anchorage, for Alaska Democratic Party, et al.

Michael J. Walleri, Tanana Chiefs Conference, Inc., Fairbanks, for Demientieff, et al.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

*OPINION*

COMPTON, Justice.

This case involves the award of attorney's fees (fees) and costs to the plaintiffs in the *Hickel* reapportionment case. *Hickel v. Southeast Conference*, 846 P.2d 38 (Alaska 1992) (*Hickel I*). The State contends that the superior court erred by (1) failing to apportion awards by issue, (2) awarding fees for post-trial litigation in which plaintiffs did not prevail, (3) determining that the Alaska Democratic Party was a prevailing party, and (4) awarding fees for noncompensable work before the United States Department of Justice (DOJ). On cross-appeal, the plaintiffs argue that the superior court erred in limiting reimbursement of plaintiffs' expert witness costs. Pursuant to an order of this court, this case also involves the initial determination of plaintiffs' pending motions for an award of attorney's fees and costs related to the review proceedings before this court in *Hickel I*.

## I. *FACTUAL & PROCEDURAL BACKGROUND*

In September 1991 several parties filed suits in superior court challenging the state legislative redistricting plan promulgated by Governor Walter J. Hickel.[1] Pre-trial preparation of the case proceeded during the fall and winter of 1991 while the DOJ reviewed the plan under section 5 of the Voting Rights Act.[2] Following a sixteen-day trial, the superior court held that the plan was invalid because it violated the Alaska Constitution.

After granting the State's Petition for Review, we affirmed the superior court's holding that the plan violated the Alaska Constitution.[3] *Hickel I*, 846 P.2d at 57. We remanded the case to the superior court with instructions to (1) develop an interim redistricting plan for use in the 1992 elections, and (2) remand the plan to the Reapportionment Board to develop a new permanent plan. *Id.* With full participation by all the parties, the superior court appointed three masters to draft an interim plan. During the course of the superior court's proceedings in developing specific instructions to guide the masters, the State filed an emergency motion for clarification regarding House District 26, which was denied. The State also filed an additional Petition for Review, on which it prevailed.[4] After the superior court issued its interim redistricting plan, the State filed another Petition for Review, on which the State partially prevailed. *Hickel I*, 846 P.2d at 108 app. G.

After final action on the interim redistricting plan, each of the five plaintiffs petitioned the superior court for an award of fees pursuant to Civil Rule 82. Based on the standard set forth by this court for public interest litigants, *Hunsicker v. Thompson*, 717 P.2d 358 (Alaska 1986), each plaintiff sought full, reasonable fees. Although the State did not contest plaintiffs' public interest status, the State objected to (1) the amount plaintiffs requested, (2) the designation of the Alaska Democratic Party as a prevailing party, (3) the request for fees for any post-trial proceedings, (4) the request for full fees when plaintiffs did not prevail on several issues, (5) the request for fees and costs for time and material used in the administrative proceeding before the DOJ, (6) the request for costs for expert preparation time, and (7) the request for various fees and costs that were allegedly unreasonable.

The superior court found that since all plaintiffs had prevailed "on the main issue in the case," they were entitled to full reason-

---

1. Two of the suits were dismissed; the remaining five suits were consolidated for trial before Superior Court Judge Larry Weeks. The remaining plaintiffs include the Alaska Democratic Party (ADP), the Matanuska–Susitna Borough (Mat–Su), Dementieff, Leavitt and Southeast Conference (SEC) (collectively referred to as "plaintiffs"). For a more detailed account of this litigation, see *Hickel I*, 846 P.2d at 42–44.

2. Some of the parties opposed preclearance of the plan by the DOJ.

3. However, we reversed the superior court's holding that the Board's decision not to exclude non-resident military from the population base was arbitrary and unreasonable. *Hickel I*, 846 P.2d at 55.

4. Order of June 11, 1992 (disapproving the superior court's requirement that native influence districts include at least 35% native population). *Hickel I*, 846 P.2d at 63 app. D.

able fees under Civil Rule 82. The court rejected the State's argument that fees should not be awarded for work on specific issues on which plaintiffs did not prevail. The court also held that plaintiffs were entitled to fees and costs for work performed in the remedy phase of the case. Nevertheless, the court did not award all the fees requested by plaintiffs. The court denied (1) an award of costs for expert witness preparation fees, (2) some paralegal costs claimed by plaintiffs, (3) plaintiffs' billing of more than sixteen hours per day, and (4) some portion of plaintiffs' travel time.

The superior court awarded plaintiffs a total of $966,567.33.[5] This appeal followed, and the matter was consolidated with plaintiffs' petition for fees and costs related to the appellate proceedings before this case.

## II. DISCUSSION

### A. APPORTIONMENT OF ATTORNEY'S FEE AWARDS BY ISSUE.

■ Pursuant to statute, the Alaska Supreme Court has the authority to "determine by rule or order the costs, if any, that may be allowed a prevailing party in a civil action." AS 09.60.010. While Alaska Civil Rule 82 has been construed as providing only for partial fees, this court has used its authority to create an exception for public interest litigants. "A prevailing public interest plaintiff is normally entitled to full reasonable attorney's fees." *Hunsicker v. Thompson*, 717 P.2d 358, 359 (Alaska 1986); *see also Anchorage Daily News v. Anchorage Sch. Dist.*, 803 P.2d 402, 404 (Alaska 1990) (prevailing public interest litigant entitled to "full amount of its attorney's fees, to the extent that they are otherwise reasonable"). Since the State has conceded that plaintiffs meet the public interest standard in this case, plaintiffs are eligible for full fees provided they are reasonable.

While the State does not dispute this general rule, it argues that fees should only be awarded for those specific issues on which plaintiffs prevailed. The State notes that AS 09.60.010 only allows the award of fees to prevailing parties. Because of this, the State concludes that "full fees should not be awarded to any litigant who has raised unrelated claims on which he or she did not prevail or who has achieved only partial relief on related claims." The State urges this court to adopt the approach of the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and to apportion fees by severable issue or degree of relief awarded. The State suggests that the issue presented here is one of first impression: "Should public interest litigants who only partially prevail be awarded full fees?"

In response, plaintiffs argue that the law regarding awards of attorney's fees in public interest cases is clear: prevailing public interest litigants are entitled to *full* reasonable fees. Plaintiffs note that numerous decisions by this court hold that a party is prevailing if successful on the main issue in contention, even if the party did not prevail on all issues. Therefore, apportionment of fees by issue is inconsistent with the approach taken by this court to fee awards. Even if this court adopts the approach of *Hensley*, plaintiffs argue, the issues involved are related and thus not severable.

■ Although awards of attorney's fees are ordinarily reviewed under the abuse of discretion standard, the question of whether the superior court erred in awarding fees based on issues that plaintiffs lost is a question of law. Accordingly, this court will apply its independent judgment, and will adopt the rule of law most persuasive in light of precedent, reason and policy. *CTA Architects of Alaska, Inc. v. Active Erectors & Installers*, 781 P.2d 1364, 1365 (Alaska 1989); *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

■ As an initial matter, we note that *Hensley* dealt exclusively with fee awards under 42 U.S.C. § 1988, and therefore is not binding on this court in its application of the

---

**5.** Fees and costs were allocated as follows: Mat–Su was awarded $212,831.00 in fees and $59,597.26 in costs; SEC was awarded $229,703.33 in fees and $68,125.78 in costs; ADP was awarded $91,046.00 in fees and $21,086.30 in costs; Leavitt was awarded $176,062.41 in fees and $40,306.77 in costs; and Dementieff was awarded $54,793.75 in fees and $13,014.73 in costs.

public interest exception to Alaska Civil Rule 82. However, it may be possible to use *Hensley* by analogy, since the policies underlying § 1988 and the public interest exception are similar. Both fee award provisions are intended to reward the successful plaintiff acting as "a private attorney general," and to encourage meritorious claims which otherwise might not be brought. *See Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989); *Hensley,* 461 U.S. at 430, 103 S.Ct. at 1938; *Tobeluk v. Lind,* 589 P.2d 873, 878 (Alaska 1979); *Anchorage v. McCabe,* 568 P.2d 986, 993–94 (Alaska 1977). We must first determine the advisability of grafting the *Hensley* approach onto Alaska law.

### 1. Section 1988 Litigation & *Hensley v. Eckerhart.*

42 U.S.C. § 1988 authorizes an award of a reasonable attorney's fee and costs to prevailing parties in civil rights litigation. *Hensley,* 461 U.S. at 430, 103 S.Ct. at 1938. To be a "prevailing party" plaintiffs must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.,* 461 U.S. at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978)). This "generous formulation … brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Id.* The amount and reasonableness of the fee award is to be determined on the facts of each case, and should be evaluated according to the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). One of these factors, the relationship of the results obtained to the amount of the award, was the focus of *Hensley.*

*Hensley* held that the results obtained are particularly important where a plaintiff is deemed prevailing, but has achieved only partial or limited success. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. In this situation, two questions must be asked: (1) Did the plaintiff fail to prevail on claims unrelated to claims on which she succeeded? and (2) If the claims are interrelated, did the plaintiff achieve a level of success making the hours reasonably expended a satisfactory basis for making a fee award? *Id.*

If the claims on which plaintiff failed to prevail were unrelated to the successful claims, then the "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Id.,* 461 U.S. at 435, 103 S.Ct. at 1940 (quoting *Davis v. County of Los Angeles,* 8 Empl.Prac.Dec. (CCH) ¶ 9444, at 5049 (C.D.Cal.1974). If, however, the claims or issues were interrelated, the Court stated that "[t]he result is what matters." *Id.* Since "[s]uch a lawsuit cannot be viewed as a series of discrete claims," the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

### 2. Application of *Hensley* to Alaska Civil Rule 82.

While *Hensley* is unobjectionable on its own terms, there are several problems associated with extending the State's interpretation of *Hensley* to Alaska's fee award approach for public interest litigants. First, we have previously rejected the suggestion that fees should be apportioned by issue. In *Gold Bondholders Protective Council v. Atchison, Topeka & Santa Fe Railway,* 658 P.2d 776, 779 (Alaska 1983), appellants contended that the award of fees was unreasonable because most of the time was spent on issues on which appellees did not prevail. We described this contention as "untenable":

> Rule 82(a) does not require that attorneys' fees be calculated with reference to the disposition of individual issues. Rather, it expressly provides that a reasonable award of fees shall be made, at the trial court's discretion, to the *prevailing party.* The clear meaning of that provision is that the party who prevails on the principal dispositive issue is entitled to reasonable costs calculated according to the trial court's discretion. We refuse to now alter the purview of Rule 82 by requiring the niceties in apportionment urged by the [appellants].

*Id.* (citations omitted). This language indicates our unwillingness to require apportionment of fees on the basis of individual issues.[6]

Second, requiring trial courts to focus on the degree of success when judging the reasonableness of the award would be redundant in light of Rule 82's framework. Alaska's approach already takes into account the degree of success at the initial stage of determining prevailing party status. We have held:

> [T]he prevailing party to the suit is the one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention. He is the one in whose favor the decision or verdict is rendered and the judgment entered.

*Tobeluk v. Lind,* 589 P.2d 873, 876 (Alaska 1979) (quoting *Buza v. Columbia Lumber Co.,* 395 P.2d 511, 514 (Alaska 1964)).[7]

Unlike Alaska's approach, the federal approach is extremely generous in granting prevailing party status: a party is eligible for a fee award if he or she succeeds on "any" significant issue, or "when actual relief on the merits of his claim materially alters the legal relationship between the parties." *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). This lenient standard is complemented by a strict standard of reasonableness that takes into consideration the degree of plaintiff's success. *Id.,* —— U.S. at ——, 113 S.Ct. at 574. The *Hensley* approach to reasonableness makes sense in the federal framework because of the ease with which one can obtain prevailing party status. However, it does not necessarily make sense in light of Alaska's framework.[8]

Finally, while we have declined to *require* apportionment by issue in the past, we have *allowed* the trial court the discretion to consider the prevailing party's varying degree of success on issues when the court sets the award amount. In *Alaska State Bank v.*

---

**6.** The State argues that *Gold Bondholders* does not control here since that case did not involve an award of full fees to public interest litigants. The State contends that the need to apportion fees by issue arises only in the context of full fee awards to public interest litigants. In response, plaintiffs argue that it would make no sense to adopt a harsher rule for public interest litigants than for ordinary litigants. While *Gold Bondholders* arose in a slightly different context, its language regarding apportionment of fees by issue remains relevant to the issue presented by this case.

**7.** We have also noted that "a party does not have to prevail on all the issues in the case to be a 'prevailing party.'" *Day v. Moore,* 771 P.2d 436, 437 (Alaska 1989) (citations omitted). The party must be successful with regard to the main issues in the action, and need not prevail on every subsidiary issue. *Cooper v. Carlson,* 511 P.2d 1305, 1308 (Alaska 1973).

**8.** Even if we were to adopt the *Hensley* approach, it is far from clear that it would require apportionment of fees by issue in this case. The *Hensley* analysis only applies where plaintiffs have achieved partial or limited success. The Supreme Court noted:

> [W]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in

good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940 (citations omitted). One response to the State's contentions in this case might be that the plaintiffs *have* achieved "excellent" results. This conclusion would presumably foreclose a *Hensley* analysis into the degree of plaintiffs' success, and would militate against apportionment of fees by issue.

Alternatively, it is doubtful that the State could demonstrate that plaintiffs failed to prevail on claims unrelated to claims on which they succeeded. The State argues that the superior court erred in awarding attorney's fees on the basis of two issues unrelated to plaintiffs' overall success in the litigation: (1) the issue of the exclusion of nonresident military personnel, and (2) the issue of substantive due process. However, these claims are simply not unrelated, severable claims. First, the issues were an integral part of plaintiffs' overall case aimed at invalidating the Governor's reapportionment plan. Different, alternative legal theories to accomplish the same goal should not be treated as unrelated claims. *See Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. Second, plaintiffs correctly note that these theories involved a common core of facts underlying the case as a whole: the Reapportionment Board's decision-making process, guidelines, and rationales for the promulgated plan.

*General Insurance Co. of America,* 579 P.2d 1362 (Alaska 1978), we affirmed the trial court's determination that the appellee was the prevailing party. We went on to say, however, that

> it does not follow that the superior court abused its discretion by declining to award attorney's fees on each of the contested issues comprising the litigation. The superior court ruled against the [appellee] on the waiver question, and it is not "manifestly unreasonable" that it should take that factor into consideration in determining what overall amount of attorney's fees and costs should be awarded to the prevailing party.

*Id.* at 1369 (footnotes omitted). The important point is that the determination of the fee award is left to the broad discretion of the trial court. The trial court *may* apportion fees by issue in setting a reasonable fee award. However, the trial court is not required, as a matter of law, to do so.

For these reasons, we decline to require trial courts to follow the *Hensley* approach to Civil Rule 82 cases. Accordingly, we hold that the superior court did not err in refusing to apportion fees by severable issue or degree of relief awarded.

### B. APPORTIONMENT OF ATTORNEY'S FEES ACCORDING TO STAGE IN THE LITIGATION.

■ The State argues that the superior court erred in awarding attorney's fees for post-trial litigation in which plaintiffs did not prevail. The State contends that the post-trial proceedings involved severable, unrelated issues on which the State prevailed. Further, the State attempts to distinguish this case from federal cases allowing awards for post-decree litigation, arguing that plaintiffs' work during the post-remand proceedings was not necessary to protect the rights secured at trial, or to "monitor" compliance with the judgment. Accordingly, plaintiffs should not have been awarded fees for this phase of the litigation.

In response, plaintiffs argue that it makes no sense to separate the post-trial remedial stage of the litigation for purposes of awarding attorney's fees. Plaintiffs contend that the remedy phase of the case is a natural continuation of the case itself, not a new or different proceeding. They note that every complaint in this case sought to invalidate the Governor's plan *and* have it replaced by a new, constitutional plan.

We agree with the State that, under certain circumstances, public interest litigants who prevail at trial should not recover fees for post-trial proceedings in which they do not prevail. Our decision to grant public interest litigants full reasonable fees was designed to reward the successful "private attorney general" and to encourage meritorious claims that otherwise might not be brought. *See, e.g., Anchorage v. McCabe,* 568 P.2d 986, 993–94 (Alaska 1977). However, the rule was not intended to give such litigants carte blanche to litigate post-trial with the knowledge that they can recover fees regardless of whether they prevail.

In this case, however, we conclude that plaintiffs should be allowed to recover for post-trial proceedings. All of the fees sought by plaintiffs relate to attorney services performed before a final judgment was entered in the trial court. Under Civil Rule 82 attorney's fees are allowed a prevailing party as a matter of course for services rendered up to the time of the final judgment. The state's attempt to divide this case into pre- and post-trial proceedings ignores the fact that all of the proceedings preceded the final judgment and are thus within the explicit coverage of Civil Rule 82.

■ Plaintiffs' work on remand and post-remand was related to their work in having the Governor's plan held unconstitutional. They were understandably reluctant to bow out at the remedy stage and leave the preparation of a remedial plan to the State. In fact, both the superior court and this court recognized the propriety of plaintiffs' ongoing participation in the superior court's development of an interim plan. This court's order of June 8 provided in part:

> 5. Procedures and schedules regarding the submission of proposed interim plans by the parties and objections to the interim plan formulated by the superior court

shall be established by order of the superior court.

In accordance with this directive the superior court ordered the parties to submit proposed orders relative to scheduling, the use of experts and/or masters in drafting the interim plan, and comments on whether or not the Eastern and Western Aleutians could be unified in one district consistent with the Federal Voting Rights Act.

The superior court later acknowledged the importance of plaintiffs' participation:

> They responded to multiple orders of the court in the preparation of the interim plan and helped shape the plan that was finally approved. The plaintiffs provided experts, appeared for hearings on a near daily basis at the order of the court, responded to motions relating to elections generally and gave input that facilitated the management and timing of elections. It was undoubtedly a different interim plan because of their input.

This acknowledgment evidences the relatedness of the trial and post-trial stages of the litigation.[9]

Discussing the issue of separating stages of the litigation for purposes of attorney's fees, the trial court stated the following:

> The court agrees that if the post-May 11 proceedings are viewed in isolation from all that went before it, the plaintiffs were not all a 'prevailing party' for that segment of the litigation. However, this court does not believe that it is a fair assessment of this litigation to view the differing phases in isolation. The litigation was comprised of all phases, from the filing of a complaint to the adoption of the final plan as approved by the supreme court. In looking at all of that litigation, the plaintiffs are the prevailing parties as a whole. Reapportionment is too complicated for any party to get everything it wants but the plaintiffs are prevailing parties because

they obtained substantial relief on the main issues.

This statement is both a correct interpretation of this court's decisions under Rule 82, and a sound, practical choice. Therefore, the trial court did not err as a matter of law in declining to separate the stages of the litigation, since they came before the final judgment and were significantly related.

## C. THE ALASKA DEMOCRATIC PARTY'S STATUS AS A PREVAILING PARTY.

The Alaska Democratic Party (ADP) challenged the Governor's reapportionment plan on the basis that the Reapportionment Board violated the Open Meetings Act, the Public Records Act and the State Procurement Code.[10] The superior court held that the Open Meetings Act and the Public Records Act applied to the Board and that the Board violated these acts. However, the court also held that "[b]ecause of the other decisions in this case, the public interest is better served by not voiding the plan on the basis of Open Meetings Act violations." The superior court granted ADP prevailing party status, and awarded ADP full fees and costs in the amount of $112,132.30.

On appeal, we affirmed the superior court's holding that the Open Meetings Act and Public Records Act generally apply to the activities of the Reapportionment Board. *Hickel I*, 846 P.2d at 43. Because the superior court did not grant relief on this basis, however, we did not reach the questions of whether there had in fact been violations or whether any such violations warranted voidance of the plan. *Id.* at 57. The State challenges the award of attorney's fees to the ADP on the basis that the ADP was not a prevailing party.

■ Both the award of attorney's fees to the prevailing party and the determination of prevailing party status are within the broad

---

9. Federal case law supports reimbursement of fees and costs for post-judgment activities which are specifically authorized. *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (monitoring of defendant's performance); *Turner v. Orr*, 785 F.2d 1498 (11th Cir.1986) (monitoring); *Adams v. Mathis*, 752 F.2d 553 (11th Cir.

1985) (monitoring); *Miller v. Carson*, 628 F.2d 346 (5th Cir.1980) (injunction to vindicate rights).

10. ADP also challenged the plan on other grounds not relevant to this appeal.

discretion of the trial court. *Adoption of V.M.C.*, 528 P.2d 788, 795 (Alaska 1974). This court will interfere with these determinations only where the trial court's decision is "manifestly unreasonable." *Alaska Placer Co. v. Lee*, 553 P.2d 54, 63 (Alaska 1976).

The State argues that the superior court abused its discretion in awarding fees to the ADP because the ADP did not prevail on the main issue in the case—whether the original plan should be declared void on the basis of procedural violations committed by the Board. In response, plaintiffs argue that the ADP was the prevailing party because it was successful on the main issue. Plaintiffs point out that the ADP obtained (1) a declaratory judgment that the Open Meetings Act applied to the Board and that the Board violated the Act, and (2) an order requiring the Board to comply with the Open Meetings Act in the future.

■ In examining this issue, it is important to keep in mind the principle underlying the Open Meetings Act and the Public Records Act: open decision-making is one of the essential aspects of the democratic process. *Alaska Community Colleges' Fed'n of Teachers, Local No. 2404 v. University of Alaska*, 677 P.2d 886, 891 (Alaska 1984) (*ACCFT*). In *ACCFT*, we held that

> open meetings statutes were not primarily intended as vehicles for individuals displeased with governmental action to obtain reversals of substantive decisions. What the statutes envision instead is that nonconforming procedures be righted as near to the point of derailment as possible, and that the governmental process be allowed to resume from there.

*Id.* (footnotes omitted). Accordingly, we hold that a public interest litigant does not have to have a substantive decision invalidat-

ed on the basis of governmental violations of the Open Meetings Act or Public Records Act to be considered a prevailing party. We agree with the superior court that, with respect to the ADP, the main issue in this case was "whether the Open Meetings Act and the Public Records Act apply to the reapportionment board, and whether the Board violated these Acts in preparing the proposed reapportionment plan."

As noted above, we did not review the superior court's holding that the Board violated the Open Meetings Act and Public Records Act, because the superior court did not grant relief on that basis. *Hickel I*, 846 P.2d at 56–57. Nevertheless, this holding becomes relevant in this case for purposes of reviewing prevailing party status and the award of attorney's fees. Although the superior court's declaratory judgment regarding these violations is moot, the State is permitted to raise the issue since the superior court awarded fees on this basis. *See LaMoureaux v. Totem Ocean Trailer Express, Inc.* 651 P.2d 839, 840 n. 1 (Alaska 1982) (this court will review an otherwise moot issue on its merits to determine who the prevailing party is for purposes of attorney's fees).[11] Accordingly, we must determine whether the superior court erred in holding that the Board violated the Open Meetings Act and the Public Records Act.[12]

■ The superior court found that the Board committed the following violations of the Open Meetings Act: (1) "failing to give notice of teleconference cites [sic];" (2) "failing to make materials available for teleconferences;" (3) "failing to take roll call votes during teleconferences;" (4) "failing to give reasonable notice of meetings;" and (5) "meeting outside of the noticed meetings to do the business of reapportionment." The

---

**11.** Although we continue to generally support the holding in *LaMoureaux*, we are cognizant of the potential for attorneys to misuse judicial resources under such circumstances. Attorneys should not read *LaMoureaux* or this opinion as "an invitation to losing defendants to engage in what must be one of the least socially productive types of litigation imaginable: appeals from awards of attorney's fees, after the merits of a case have been concluded, when the appeals are not likely to affect the amount of the final fee." *Hensley v. Eckerhart*, 461 U.S. 424, 442, 103 S.Ct. 1933, 1944, 76 L.Ed.2d 40 (1983) (Brennan, J., concurring in part and dissenting in part).

**12.** As this is a question of law, we review this issue *de novo*. To the extent that it involves factual questions, this court will reverse only if the superior court's factual findings were clearly erroneous. *Brosnan v. Brosnan*, 817 P.2d 478, 480 (Alaska 1991).

court also found that the Board committed two violations of the Public Records Act: (1) it ignored written requests to provide information; and (2) it failed to make materials available in a timely manner.

We disagree with the superior court that the Board's handling of teleconferences violated the Open Meetings Act. The Open Meetings Act allows, but does not require, the use of teleconferencing "for the convenience of the parties, the public, and the governmental units conducting the meetings." AS 44.62.312(a)(6); *See* AS 44.62.-310(a) ("attendance and participation at meetings ... *may* be by teleconferencing") (emphasis added). While teleconferencing is not mandatory, the Act requires certain procedures if it is used. These include making materials available at teleconference locations, taking votes by roll call, and providing reasonable public notice as to the time, date and location of the teleconference location to be used. AS 44.62.310.

In this case, the Board usually had only one meeting site. However, the Board allowed any citizen to call in and provide testimony by telephone, without necessarily travelling to an official teleconference site. In the Board's view, this approach expanded public access to the reapportionment process, and was consistent with the provisions of the Open Meetings Act. We agree. The participation of the public would have been more meaningful had the individual callers been provided with reapportionment materials. Nevertheless, the Board was only required to hold open meetings—it was not required to allow citizens to call in or to set up teleconferencing centers. AS 44.62.310. We therefore hold that the Board's procedure, however imperfect, did not violate the Open Meetings Act.

13. Although the executive director adopted a policy of five days notice for meetings, the Board provided less notice for a number of meetings. For example, three days notice was given for the January 14 meeting, four days for the March 4 meeting, and four days for the April 29 meeting.

14. The following meetings were given either no notice or insufficient notice in the rural papers: (1) January 14, (2) February 20, (3) February 27, and (4) April 9.

■ However, we do agree with the superior court that the Board violated the Act by providing inadequate notice for a number of its meetings. The Act requires that "[r]easonable public notice shall be given for all meetings required to be open under this section." AS 44.62.310. The superior court found that the Board violated its own guidelines as to reasonable notice,[13] failed to advertise in rural newspapers on several occasions,[14] and provided information about meetings that was "varied and confusing."[15] The superior court also found that the manner of notification discouraged citizen participation. Based on a review of the record, we do not find the superior court's factual findings to be clearly erroneous. We therefore hold that the Board violated the Open Meetings Act by failing to provide reasonable notice regarding the Board's meetings throughout the state.

■ The superior court also held that the Board violated the Open Meetings Act by "meeting outside of noticed meetings to do the business of reapportionment." In *Brookwood Area Homeowners Association v. Anchorage*, 702 P.2d 1317 (Alaska 1985), we held that "a 'meeting' includes every step of the deliberative and decision-making process when a governmental unit meets to transact public business." *Id.* at 1323. We noted that "the question is not whether a quorum of a governmental unit was present at a private meeting. Rather, the question is whether activities of public officials have the effect of circumventing the OMA." *Id.* at 1323 n. 6.

The superior court found that Board members had one-on-one conversations with each other, in which they discussed reapportionment affairs and districting preferences, and solicited each other's advice. It also found that the "dearth of [substantive] discussion on the record, combined with the manner of

15. Judge Weeks found that (1) notices for the April 29 meeting in St. Mary's were varied and confusing, as to time and whether there was a meeting or hearing; (2) the display ad for the May 27 and 28 meetings in Juneau were varied and confusing, as to time and dates and whether there would be a hearing; and (3) many of the notices did not make it clear whether a meeting or hearing would take place.

some Board members at trial, as well as other evidence presented at trial, convinces this court that important decision making and substantive discussion took place outside the public eye." Our review of the record indicates support for the factual finding that the Board conducted some of its reapportionment business outside scheduled public meetings. Based on this finding, we agree with the superior court that the Board violated the Open Meetings Act.

■ We also agree that there were minor violations of the Public Records Act. The Public Records Act states that "[e]very person has a right to inspect a public record in the state.... Every public officer having the custody of records not included in the exceptions shall permit the inspection, and give on demand ... a certified copy of the record." AS 09.25.120. The superior court found that some written requests for records were ignored, that materials were not made available in a timely manner, and that people had difficulty obtaining information. Our review of the record indicates support for these findings, and leads us to conclude that the Board violated the Public Records Act.

On the basis of the above analysis, we conclude that the superior court did not err in holding that the Board violated the Open Meetings Act and the Public Records Act. Accordingly, the superior court did not abuse its discretion in granting the ADP prevailing party status or in awarding the ADP attorney's fees.

### D. AWARD OF FEES AND COSTS FOR WORK ALSO ATTRIBUTABLE TO DEPARTMENT OF JUSTICE PROCEEDINGS.

■ Both parties agree that fees and costs incurred by plaintiffs in opposing preclearance of the reapportionment plan before

the DOJ cannot be recovered under Rule 82. However, the parties disagree over the proper attribution of certain costs.

The State argues that the superior court erred in awarding costs that were partially attributable to the DOJ proceedings. The State's primary argument is that costs incurred originally for DOJ proceedings are not compensable even if the work product was later used at trial.[16] The State proposes a "first-use" rule, whereby dual-use work product would be attributed only to the first proceeding in which it is used.[17] Plaintiffs argue against the creation of such a rule, and deny that the work objected to was used "first, or even primarily, in the preclearance process."

We decline to adopt the "first-use" rule advocated by the State. It is neither desirable nor possible to allocate related work in two concurrent actions to a discrete "first use." The superior court noted:

> Work that was done solely for DOJ proceedings should not be recompensed here. However, work that was done for state litigation that was also used in DOJ proceedings should be included under this order. The two proceedings had related issues and to exclude attorney's fees because the work had a "dual purpose" is arbitrary and would encourage inefficiency.

Further, the superior court made an effort to allocate dual-use work, rather than denying recovery altogether. For instance, Mat–Su and SEC split their bills for dual-use work, attributing two-thirds to the state and one-third to the DOJ proceeding.

It was not manifestly unreasonable for the superior court to award compensation for work that was used in both proceedings. Therefore, we affirm the superior court's decision.

---

**16.** The State also argues that plaintiff Leavitt underestimated the time it spent on DOJ proceedings. This issue is easily resolved. Leavitt submitted two affidavits to the superior court explaining the basis for a ten percent allocation. The superior court used this information in judging the reasonableness of the allocation and award, noting: "The State offers no factual basis for its assertions contradicting the plaintiffs' claims, and this court accepts the firm's representations and finds the billing reasonable."

This decision did not constitute an abuse of discretion.

**17.** Under the first-use rule proposed by the State, the State would pay for (1) any reasonable work-product *first* introduced in state court before being reused in a different proceeding, and (2) the full cost for any reasonable modification or enhancement to a previously used work-product.

**E. ADMINISTRATIVE RULE 7(c)—LIMITATION ON PUBLIC INTEREST LITIGANTS' EXPERT WITNESS COSTS.**

▆▆▆▆ On cross-appeal, plaintiffs argue that the superior court erred in refusing to adopt a public interest exception to Alaska Administrative Rule 7(c). Whether there is a public interest exception to Rule 7(c) is a question of law to which this court will apply its independent judgment. *CTA Architects of Alaska, Inc. v. Active Erectors & Installers, Inc.*, 781 P.2d 1364, 1365 (Alaska 1989). To the extent the superior court's decision was consistent with the legal principles adopted by this court, its decision will be reviewed only for an abuse of discretion. *Id.*

▆▆▆▆ Rule 7(c) states that recovery of expert witness costs is "limited to the time when the expert is employed and testifying and shall not exceed $50.00 per hour, except as otherwise provided in these rules." This court has interpreted Rule 7(c) to mean that "[a] party may not recover costs for experts' preparation time nor any costs associated with the experts if they do not testify." *Atlantic Richfield Co. v. State*, 723 P.2d 1249, 1253 (Alaska 1986). Based on Rule 7(c), the superior court refused to compensate plaintiffs for $129,832.13 in expert costs incurred in preparation for trial and in developing an interim reapportionment plan.

Plaintiffs argue that the public interest exception to Civil Rule 82—which provides for full reasonable attorney's fees for prevailing public interest litigants—should be extended to Administrative Rule 7(c)'s limitation on expert costs. They contend that the rationale is the same: encouraging "plaintiffs to raise issues of public interest by removing the awesome financial burden of such a suit." *Anchorage v. McCabe*, 568 P.2d 986, 990 (Alaska 1977). Plaintiffs note that this court has already held that costs may not be assessed *against* a losing public interest litigant. *McCormick v. Smith*, 799 P.2d 287, 288 (Alaska 1990). Therefore, they argue

that the same reasons for preventing an award of costs against a losing plaintiff suggest that the prevailing public interest litigant receive full reimbursement of expert witness costs.

In response, the State notes that this court has allowed an award of costs for experts' pre-trial preparation time *only* in (1) cases involving bad faith or reprehensible conduct, or (2) in divorce cases where awards of costs are not governed by Rule 7(c).[18] The State argues that policy considerations do not support creating a rule whereby prevailing public interest litigants would receive *full* expert witness preparation fees. In fact, Alaska Civil Rule 94—which allows courts to relax the rules to prevent injustice—provides ample protection for public interest litigants without the rigidity of an "automatic" rule. Further, the State claims that Rule 7(c) must be amended under Alaska Administrative Rule 44 rather than by a decision of this court.

This court clearly has the authority to create an exception to Rule 7(c). We can "determine by rule or order the costs, if any, that may be allowed a prevailing party in a civil action." AS 09.60.010. However, the fact that this power exists does not mean that we should exercise it here. We decline to create a public interest exception to Administrative Rule 7(c), and rely instead on the trial court's exercise of discretion under Civil Rule 94.

Civil Rule 94 allows the trial court to relax or dispense with a rule of procedure if it is "manifest to the court that a strict adherence to [the rule] will work injustice." Alaska R.Civ.P. 94. Thus, the superior court had the discretion to ignore Administrative Rule 7(c) if the court felt that its application would work injustice on the plaintiffs in this case. The superior court could have decided that leaving plaintiffs with uncompensated expert costs would unjustly chill public interest litigation or "undercut the purpose of the public interest attorney fee rule." In fact, the supe-

---

**18.** *See Hilliker v. Hilliker*, 828 P.2d 1205, 1206 (Alaska 1992) (costs may be awarded based on economic circumstances in divorce cases since award of costs is not governed by rule 7(c)); *Atlantic Richfield Co. v. State*, 723 P.2d 1249, 1253 (Alaska 1986) ("[a] party may not recover costs for experts' preparation time"); *Miller v. Sears*, 636 P.2d 1183, 1195 (Alaska 1981) (an award of additional costs may be justified in cases involving bad faith).

rior court explicitly considered these arguments under Civil Rule 94, and declined to "abrogate Administrative Rule 7(c)" for any of these reasons.

The superior court's decision to apply Administrative Rule 7(c) in this context, without modification pursuant to Civil Rule 94, did not constitute an abuse of discretion.

### F. PLAINTIFFS' FEE REQUEST ON APPEAL.

Four plaintiffs in this action seek attorney's fees for work performed before this court. Leavitt has requested $23,280 (Motions of Aug. 19, 1992 & Jan. 8, 1993), ADP $12,380 (Motion of Jan. 7, 1993), SEC $25,200 (Motion of Jan. 18, 1993), and Mat–Su $24,631.25 (Motion of Jan. 18, 1993). The total fees requested on appeal are $85,-491.25.[19]

The State makes essentially the same arguments for reducing fees on appeal that it made regarding fees awarded at the trial level. The State argues that (1) each of the petitions brought by the State during the course of this litigation must be viewed as separate proceedings, and that fees should be awarded only to the extent of plaintiffs' success on each matter; (2) the fees requested for the first petition are unreasonable; (3) the ADP is not entitled to any fees since it did not prevail; and (4) no fees should be awarded for work on the population base issue, since the State prevailed.

Alaska Appellate Rule 508(b) provides: "In all cases of affirmance of a judgment or any order or decision of the superior court, costs shall be allowed to the appellee or respondent unless otherwise ordered by the court." Since plaintiffs successfully defended against the State's Petition for Review and since we substantially affirmed the superior court's

decision, they are entitled to an award of fees. Further, we have the discretion to determine the amount of the award: "Attorney's fees may be allowed in an amount to be determined by the court." Alaska R.App.P. 508(e).

We have held that it is "appropriate to award full attorney's fees on appeal to a successful public interest litigant." *Thomas v. Bailey*, 611 P.2d 536, 539 (Alaska 1980).[20] However, our decision today qualifies this rule to a certain extent. As we recognized above, the public interest rule "was not intended to give [public interest] litigants carte blanche to litigate post-trial with the knowledge that they can recover fees regardless of whether they prevail." *See supra* text at 926. Likewise, a public interest litigant's general prevailing party status does not mean the litigant should recover fees incurred in bringing or defending petitions for review in which that party does not prevail.

This case involved three separate petitions for review. While plaintiffs generally succeeded in having the superior court's decision affirmed, plaintiffs did not prevail on the second and third petitions, or on their cross-petition. Accordingly, plaintiffs should not recover fees incurred in defending against these two petitions, or in bringing their cross-petition.[21] We therefore direct plaintiffs to resubmit their fee and cost requests, deleting fees and costs incurred defending against the State's second or third petition for review, or in bringing their own cross-petition for review.

### III. CONCLUSION

The superior court did not err as a matter of law in refusing to apportion fees according to issue or stage in the litigation. We agree with the superior court that the Board violat-

---

**19.** The State's total of $85,011.25 fails to take into account Leavitt's additional request for $480 for preparing its reply memorandum on appeal.

**20.** A prevailing public interest litigant is normally "entitled to the full amount of its attorney's fees, to the extent that they are otherwise reasonable." *Anchorage Daily News v. Anchorage Sch. Dist.*, 803 P.2d 402, 404 (Alaska 1990).

The reasonableness of the fee request should be judged in light of "all relevant factors, including the nature and value of the services rendered,

the duration and complexity of the litigation, the novelty of the issues presented, the amount in controversy, and the [party's] time-keeping procedures." *Atlantic Richfield Co. v. State*, 723 P.2d 1249, 1252 (Alaska 1986).

**21.** At the same time, plaintiffs need not fear having Rule 82 attorney's fees assessed against them in this context. *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974).

ed the Open Meetings Act and Public Records Act. Accordingly, we conclude that the superior court did not abuse its discretion in awarding the ADP prevailing party status or in generally awarding plaintiffs their full, reasonable attorney's fees and costs.

The superior court did not err in awarding allocated compensation for work used in both state and DOJ proceedings, nor did it err in refusing to create a public interest exception to Administrative Rule 7(c). We therefore AFFIRM the superior court's award of attorney's fees, and the superior court's limited award of expert witness costs.

Respondents may not recover for time spent on the State's second and third petitions for review, or on their cross-petition for review, since they did not prevail. We therefore direct respondents to resubmit their fee and cost requests to reflect this holding.

RABINOWITZ and MATTHEWS, JJ., dissent in part.

RABINOWITZ, Justice, with whom, MATTHEWS, Justice, joins dissenting in part.

I dissent from the majority's holding that Alaska Administrative Rule 7(c) limits reimbursement of a prevailing public interest litigant's expert witness costs to $50.00 per hour for time spent testifying.[1] Plaintiffs assert that they incurred $134,103.06 in expert witness fees and associated costs, and that the superior court awarded only $4,270.93 in costs for expert witnesses.

In my view, resolution of this issue is controlled by two prior decisions of this court. In *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974), we concluded that "it is an abuse of discretion to award attorneys' fees against a losing party who has in good faith raised a question of genuine public interest before the courts."[2] Building on *Gil-*

*bert*, we subsequently held that a prevailing public interest litigant is entitled to an award of full attorney's fees. *Anchorage v. McCabe*, 568 P.2d 986, 991 (Alaska 1977). In part, we said:

The *Gilbert* public interest exception to Rule 82 is designed to encourage plaintiffs to bring issues of public interest to the courts. In holding that as a matter of sound policy attorney's fees should not be assessed against public interest plaintiffs, we relied in *Gilbert* on the appellant's argument "that awarding fees in this type of controversy will deter citizens from litigating questions of general public concern for fear of incurring the expense of the other party's attorney's fees." Adoption of the City's contention that public interest plaintiffs should not be awarded attorney's fees would be inconsistent with the above stated policy.

*Id.* at 990 (footnote omitted). More particularly, we noted that the basic rationale of the *Gilbert* public interest litigant exception to the Civil Rule 82 partial award of attorney's fees is "to encourage plaintiffs to raise issues of public interest by removing the awesome financial burden of such a suit." *Id.*

In my view these same considerations mandate adoption of a prevailing public interest litigant exception to the partial award of costs of expert witnesses called for in Administrative Rule 7(c).[3] Failure to fully reimburse the reasonable costs of necessary expert witnesses employed by prevailing public interest litigants creates an unwarranted barrier to litigation of important issues of public interest. I would therefore remand this case to the superior court for the purpose of awarding such costs.

**1.** Alaska Administrative Rule 7(c) provides:

Recovery of costs for a witness called to testify as an expert is limited to the time when the expert is employed and testifying and shall not exceed $50.00 per hour, except as otherwise provided in these rules. A party may not recover costs for more than three expert witnesses as to the same issue in any given case,

unless the judge permits recovery for an additional number of expert witnesses.

**2.** *Accord Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1227 (Alaska 1975).

**3.** We have held that costs may not be assessed against a losing public interest litigant. *McCormick v. Smith*, 799 P.2d 287, 289 (Alaska 1990).