Sean HALLORAN, Appellant,

v.

STATE of Alaska, DIVISION OF ELECTIONS, Appellee.

No. S–11358.

Supreme Court of Alaska.

June 24, 2005.

---

Michael Jungreis, Hartig Rhodes Hoge & Lekisch, PC, Anchorage, for Appellant.

Sarah J. Felix, Assistant Attorney General, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

A voter challenged the constitutionality of election procedures for voting on an initiative proposition in the August 2002 primary election. The voter obtained a temporary restraining order that allowed him to cast a vote on the proposition in the primary without affiliating with one of the six political parties offering ballots, but his main constitutional challenge was later mooted by legislation that revamped the procedure for primary elections. The superior court declined to award attorney's fees to the voter because it found that neither party had prevailed under the catalyst approach. Although it was not error for the superior court to reject the voter's fee request under the catalyst approach, we remand for consideration of his alternative theory that entry of the temporary restraining order made him the prevailing party.

## II. FACTS AND PROCEEDINGS

The August 27, 2002 primary election was the first held after the Alaska legislature enacted chapter 103, SLA 2001. That statute, codified as AS 15.25.010, changed the primary format in Alaska from a blanket primary election—in which one ballot was provided for all parties and candidates—to a closed primary election—in which separate party primary ballots were provided for each recognized political party. Each party's 2002 primary ballot set out: (1) the candidates nominated to represent that party in the general election and (2) a ballot initiative proposition known as 99PRVT. That initiative proposition, titled an "Initiative Implementing Alternative Voting Electoral System," was non-partisan and was identical on each party's ballot. The proposition was on the 2002 primary ballot because AS 15.45.190 requires an initiative proposition to be placed on "the first statewide general, special, or primary election" conducted after the measure is eligible for voting. Only by using a ballot provided by one of the six parties could

a voter cast a vote on the initiative proposition in the 2002 primary.

Sean Halloran went to his polling place on primary election day and was told that he had to choose a political party ballot in order to vote. He refused to publicly associate himself with any of the political parties and was therefore denied the opportunity to vote, even on 99PRVT.

Later that day Halloran filed a three-count complaint in superior court. His complaint alleged that the Alaska Division of Elections violated his right to vote, right of privacy, and right of free association by requiring him to affiliate with a political party before casting a vote on a non-partisan ballot initiative proposition. He asked the court to grant orders: (1) directing the Division of Elections to permit him to vote on 99PRVT without affiliating with a political party; (2) declaring the primary election system unconstitutional; and (3) permanently enjoining the division from requiring voters to affiliate with a political party prior to voting on "matters other than the selection by political parties of candidates."

Following a contested hearing, the superior court issued a temporary restraining order (TRO) that instructed the division to allow Halloran to randomly choose one of the parties' ballots and cast his vote on the initiative proposition. Halloran took this order to his polling place and voted in accordance with its terms.

On September 17, 2002 Halloran filed an amended complaint alleging that the state intended to use the same closed ballot voting system for future primary elections (including initiative propositions) and that use of this mechanism would continue to infringe upon his rights. The state answered and moved for summary judgment based on the statute of limitations. Halloran opposed the state's motion and cross-moved for summary judgment.

While these motions were pending, the legislature passed House Bill (H.B.) 46.[1] House Bill 46 requires the Division of Elec-

---

1. Ch. 96, SLA 2003 (enacting C.S.H.B. 46(STA) (effective Sept. 14, 2003)). H.B. 46 amended AS 15.25.060(a).

tions to issue a separate primary election ballot that contains only the ballot titles and initiative propositions being voted on in the primary election.[2] This ballot is separate from the political party ballots and can be used by anyone who does not wish to affiliate with a political party.

After the legislature passed H.B. 46, the superior court held the summary judgment motions in abeyance to give Governor Frank Murkowski an opportunity to act on H.B. 46. Governor Murkowski signed the bill into law and it became chapter 96, SLA 2003. The superior court then declared Halloran's case moot but reserved the issue of attorney's fees. Both sides moved for attorney's fees; both sides asserted prevailing party status. Halloran argued that the superior court should employ the catalyst theory to determine which party had prevailed and that he had achieved some of the benefit he sought when the court issued the TRO allowing him to vote. The state claimed that it had prevailed because its goal was dismissal of the case, which was ultimately dismissed as moot.

The superior court entered an order declaring that "[n]either Sean Halloran, nor the State of Alaska, Division of Elections is the prevailing party in this action. Neither shall recover attorneys' fees, costs or interest." The court discussed the catalyst theory and determined that Halloran had not proved that his lawsuit motivated the legislature's enactment of H.B. 46. The court refused to

delve into the motivations behind passage of H.B. 46, stating that to do so would be "an intrusion upon the affairs of the legislative branch." It found that Halloran sought to have the court declare the primary election procedure unconstitutional. Reasoning that the legislature's passage of H.B. 46 did not establish that the preexisting election law was unconstitutional, the superior court held that Halloran had not achieved the goal of his litigation.

Halloran appeals the denial of his motion for full costs and attorney's fees.

## III. DISCUSSION

### A. Standard of Review

 We review the superior court's determination of prevailing party status for abuse of discretion.[3] We exercise our independent judgment in reviewing whether a trial court has applied the appropriate legal standard in making its prevailing party determination.[4]

### B. We Have Jurisdiction To Decide Whether the Superior Court Erred in Failing To Grant Attorney's Fees to Any Party.

 The state first asserts that "where there was no award of attorney's fees that would be affected by appellate review," it is "not clear" that we have jurisdiction to hear the appeal.[5] But AS 22.05.010 grants parties

**2.** Following amendment in 2003, AS 15.25.060(a) provides:

The primary election ballots shall be prepared and distributed by the director in the manner prescribed in this section. The director shall prepare and provide a primary election ballot for each political party that contains all of the candidates of that party for elective state executive and state and national legislative offices *and all of the ballot titles and propositions required to appear on the ballot at the primary election.* The director shall print the ballots on white paper and place the names of all candidates who have properly filed in groups according to offices. The order of the placement of the names for each office shall be as provided for the general election ballot. Blank spaces may not be provided on the ballot for the writing or pasting in of names. *The director shall also prepare and print a separate primary election ballot including only the ballot*

*titles and propositions required to appear on the ballot.*
(Underlined text added by H.B. 46.)

**3.** *Shepherd v. State, Dep't of Fish & Game,* 897 P.2d 33, 44 (Alaska 1995).

**4.** *Koller v. Reft,* 71 P.3d 800, 804 (Alaska 2003).

**5.** The state bases its jurisdictional argument on *Ulmer v. Alaska Restaurant & Beverage Ass'n (ARBA),* 33 P.3d 773, 777 (Alaska 2001). We there held that "[b]ecause there was no award of attorney's fees that would be affected by appellate review and the issue has not been preserved for appeal, we decline to reach the merits on this basis." *Id.* In that case, the state had not sought attorney's fees in the superior court. *Id.* We held that the state could not request attorney's fees for the first time on appeal. *Id. ARBA* does not stand for the proposition that we will not, or

such as Halloran an appeal to this court as a "matter of right."[6] This right is not affected by the fact that the superior court declined to award any attorney's fees[7] or that the merits of much of Halloran's case are moot.[8] We have jurisdiction to decide an appeal asserting that the superior court erroneously denied the appellant's motion for an award of attorney's fees.

### C. The Catalyst Theory Does Not Apply to a Lawsuit Mooted by Legislation Absent the Clearest Expression of Legislative Intent.

■ Halloran argued in the superior court and argues on appeal that correctly applying the catalyst theory requires a determination that he is the prevailing party for purposes of awarding attorney's fees.

We have stated that the catalyst theory, when it applies, requires a party to show that a "goal of the litigation" was achieved by succeeding on "any significant issue which achieves some of the benefit sought in bringing the suit."[9] The party must then show that its lawsuit was "a substantial factor or significant catalyst" in the action that caused the case to become moot.[10] A plaintiff must "show both a causal connection between the filing of the suit and the defendant's actions and that the defendant's conduct was required by law, i.e., not a wholly gratuitous response to an action that in itself was frivo-

lous or groundless" in order to succeed under the catalyst theory.[11]

Halloran relies on *DeSalvo v. Bryant*, in which we held that the catalyst approach "allows for awards of attorney's fees in instances where a plaintiff prevails when his or her lawsuit brings about the relief requested in a manner other than a formal judgment."[12]

The state argues that Halloran is reading *DeSalvo* too broadly. We agree. In *DeSalvo*, the lawsuit was mooted by a settlement procured by the parties themselves without their respective counsels' knowledge in an attempt to thwart the payment of counsel's fees.[13] We held that "courts should not participate in denying [counsel] compensation as the result of the questionable conduct of [their clients] in settling the ... claims behind counsel's back."[14] Although the catalyst theory had been questioned by the federal courts, we held that it could be applied to DeSalvo's case.[15]

In the course of denying costs and attorney's fees to both sides, the superior court held that Halloran had "not adequately shown that he was the 'catalyst' in this case becoming moot and dismissed." It further stated:

He has not shown that his lawsuit motivated the Alaska State Legislature to enact House Bill 46. Halloran's complaint sought to have the existing Alaska election

cannot, review a superior court's refusal to award attorney's fees to either party.

6. AS 22.05.010(a) states that "a party has only one appeal as a matter of right from an action or proceeding commenced in either the district court or the superior court."

7. *Cf. De Witt v. Liberty Leasing Co. of Alaska*, 499 P.2d 599, 601 (Alaska 1972) (holding that trial court's determination that neither party prevailed was "manifestly unreasonable" and its refusal to enter attorney's fees award was erroneous).

8. *LaMoureaux v. Totem Ocean Trailer Express, Inc.*, 651 P.2d 839, 840 n. 1 (Alaska 1982) (holding that court will hear moot case to determine prevailing party for attorney's fees purposes).

9. *DeSalvo v. Bryant*, 42 P.3d 525, 530 (Alaska 2002).

10. *Id.*

11. *Id.*

12. *DeSalvo v. Bryant*, 42 P.3d 525, 530 (Alaska 2002).

13. *Id.* at 527.

14. *Id.* at 529.

15. Although the United States Supreme Court has recently disavowed use of the catalyst theory in suits under federal fee-shifting statutes, the rationale behind this theory may apply to the facts of this case. As this approach allows for awards of attorney's fees in instances where a plaintiff prevails when his or her lawsuit brings about the relief requested in a manner other than a formal judgment, we believe that it may be appropriately used under the circumstances of this case.

law declared unconstitutional. The legislature merely enacted a new law. It did not necessarily agree that the old scheme was unconstitutional. Halloran's goal was not achieved by the litigation and it is unclear that it would have been.

The court also stated:

Delving into the thought processes and motivations of the Alaska State Legislature is not in the [province] of this court. Deciding whether Halloran's lawsuit or his lobbying efforts or public outcry prompted the legislature to enact House Bill 46 is a political question.[3] Court involvement would result in an intrusion upon the affairs of the legislative branch.[4] Therefore, a causal connection between Halloran's lawsuit and the enactment of House Bill 46 has not been established. Halloran is not entitled to an award of attorney's fees and costs.

---

[3] *State, DNR v. Tongass Conservation Soc.*, 931 P.2d 1016, 1020 (Alaska 1997) (courts should not attempt to determine whether a lawsuit "rather than, for example, vigorous lobbying, or a collective perception of good public policy, prompted the legislature [to act or] not to act").

[4] *Id.*

■ We agree with the superior court's comments concerning the difficulty of determining whether a pending lawsuit caused the legislature to enact a particular law. When a case becomes moot due to a legislative amendment, rarely if ever could a party prove that its litigation conduct was a "substantial factor or significant catalyst" in the passage of the legislation because that determination would require the court to delve into the mind of the legislature. We have

held that "ascertaining the legislature's true motive is a task which more often than not would be impossible" and that judicial inquiries into the legislature's motives are to be avoided.[16] Thus, the catalyst theory should not be used to determine the prevailing party when a case is mooted by a legislative enactment absent the very clearest expression of legislative purpose. In such a case, it is not enough for a party to show that its lawsuit "provided some impetus" for the legislative change.[17] Halloran has not referred us to any facts, and to nothing in the text of H.B. 46 or in its legislative history, that would satisfy the rigorous standard of causation that applies in such a case.[18] We therefore hold that the superior court did not abuse its discretion by rejecting Halloran's request for an attorney's fees award under the catalyst approach.

### D. The Prevailing Party Issue Should Be Decided in this Case Under Civil Rule 82 Without Using the Catalyst Theory.

■ Halloran also argued in his superior court attorney's fees motion that whether his lawsuit caused the legislature to change the primary election balloting system was irrelevant because he had "achieved some of the benefit sought in bringing the suit." He contended that he sought to vote on 99PRVT without associating with a political party and that he achieved that goal when the superior court granted the TRO that required the division to allow him to choose a ballot at random and cast his vote on the initiative proposition. Although Halloran primarily relied on the catalyst theory, which we conclud-

---

*Id.* at 530 (internal citations omitted).

**16.** *State, Dep't of Natural Res. v. Tongass Conservation Soc'y*, 931 P.2d 1016, 1019–20 (Alaska 1997) (holding inquiry into legislature's motives for not enacting bill involves political question that is nonjusticiable). We used the catalyst approach in that case because the lawsuit arose from a federal statute and federal courts were, at the time, using the catalyst approach. *Id.* at 1017.

**17.** *But cf. City of Yakutat v. Ryman*, 654 P.2d 785, 793 (Alaska 1982) (affirming superior court's discretionary refusal to award prevailing party status to defendant whose case was dismissed because superior court found plaintiff's

lawsuit "provided some impetus" for city's corrective actions which mooted issues and resulted in dismissal).

**18.** In holding that the catalyst theory should not be used when lawsuits are mooted by legislative action, we do not completely disavow its use. There may be times the catalyst theory may be used to determine the prevailing party for purposes of awarding attorney's fees. *See, e.g., Jerue v. Millett*, 66 P.3d 736, 743 n. 13, 749 (Alaska 2003) (stating that "under some circumstances plaintiffs may be able to recover attorney's fees in at least some types of cases dismissed for mootness," but declining to decide whether catalyst theory applies to shareholder derivative suit).

ed in Part III.C does not apply here, his argument in the superior court that obtaining the TRO made him the prevailing party justifies our consideration of this more traditional basis for awarding fees in Alaska.[19]

Alaska Civil Rule 82 provides that "the prevailing party in a civil case shall be awarded attorney's fees." We have long held that the prevailing party is the party that succeeds on the main issue in the case.[20] But we do not require a party to succeed on all issues in order to prevail.[21] When each party prevails on some issue, it is within the trial court's discretion to refuse to designate either party as the prevailing party.[22]

The state relies on *Shepherd v. State, Department of Fish & Game*[23] in arguing that obtaining a TRO is not itself sufficient to confer prevailing party status. Shepherd sued the Alaska Department of Fish and Game, alleging that regulations favoring resident hunters over non-resident hunters were unconstitutional.[24] The superior court eventually ruled against Shepherd and upheld the state's regulation, but early in the litigation Shepherd succeeded in having some emergency regulations overturned because they had been improperly noticed.[25] We affirmed the superior court's finding that the state was the prevailing party. We reasoned that "the procedural validity of the emergency regulations [was] only peripheral to the central issue litigated by the parties—the constitutionality of AS 16.05.255(d)."[26]

Although Halloran's case is similar to *Shepherd* in that both cases involved a preliminary judicial action followed by a substantive constitutional challenge, they are procedurally distinguishable. In *Shepherd*, the substantive issues were fully litigated and the regulations were ultimately determined to be constitutional.[27] Here, the superior court never finally resolved the constitutional question because it became moot. Although Halloran's only victory was in obtaining the TRO that allowed him to vote, the TRO was also the only relief granted during the litigation. In *Shepherd*, the preliminary victory was purely procedural; it did not require the court to undertake any constitutional analysis.[28] Here, the TRO stated that "[i]f this order is not issued, [Halloran] will be unable to exercise his constitutional right to vote without being forced to affiliate himself with a party with which he does not wish to be affiliated." The superior court's order also stated that Halloran "may lawfully refuse" to affiliate himself with any political party. The TRO was not "peripheral to the central issue" of the constitutionality of the challenged election procedure—the superior court considered the substantive issues in deciding to grant the order.

The state argues that the voting procedure required by the TRO did not provide Halloran the relief he requested because he was required to cast his vote on the ballot of one of the parties. We are unconvinced by this contention. Halloran's complaint sought "an order directing the defendant to permit the plaintiff to vote on the ballot measures ... without first requiring the plaintiff to affiliate with any political party." The TRO required election officials to "allow Mr. Halloran to select one ballot in a manner that does not constitute his having a selection of a party's specific ballot." Election officials allowed

19. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985) (applying liberal approach to determining whether issue or theory was raised in lower court).

20. *Hickel v. Southeast Conference*, 868 P.2d 919, 925 (Alaska 1994) (citing *Tobeluk v. Lind*, 589 P.2d 873, 876 (Alaska 1979)).

21. *Day v. Moore*, 771 P.2d 436, 437 (Alaska 1999) (holding superior court did not abuse its discretion in finding that plaintiff who succeeded on one of three claims and defeated counterclaim was prevailing party).

22. *Fernandes v. Portwine*, 56 P.3d 1, 8 (Alaska 2002); *see also Nordin Constr. Co. v. City of Nome*, 489 P.2d 455, 474 (Alaska 1971).

23. *Shepherd v. State, Dep't of Fish & Game*, 897 P.2d 33 (Alaska 1995).

24. *Id.* at 36.

25. *Id.* at 36, 44.

26. *Id.* at 44.

27. *Id.* at 45.

28. *Id.* at 44.

Halloran to vote in accordance with the TRO. The TRO therefore allowed him to vote on the initiative proposition without affiliating himself with any party; this was part of the relief his complaint requested.

The state also argues that the TRO could not confer prevailing party status on Halloran because Halloran did not seek to make the TRO permanent. But once Halloran cast his vote on August 27, 2002, the TRO had achieved its purpose. The relief Halloran requested in seeking the TRO was permanent; he was permitted to and in fact did vote on 99PRVT without affiliating with a party. The later dismissal of his complaint did not cause his vote to be uncounted.

In the superior court, Halloran barely raised his alternative theory that entry of the TRO made him the prevailing party. It is therefore not surprising that the attorney's fees order did not address this alternate argument. But because the order did not rule on this alternative theory, it is necessary to remand for consideration of whether entry of the temporary restraining order made Halloran successful on a main issue in his case.

### E. The Superior Court Is Not Required To Apportion Fees According to Stage in the Litigation.

 It is undisputed that Halloran is a public interest litigant.[29] As a public interest litigant, Halloran is entitled to full reasonable attorney's fees if he is determined on remand to be the prevailing party.[30]

The state argues that if Halloran is determined to be the prevailing party, he should recover fees only for work done up to the issuance of the TRO.[31]

In *Hickel v. Southeast Conference,* we held that the superior court did not abuse its discretion by declining to apportion its attorney's fees award according to the stage in the litigation.[32] The superior court awarded full reasonable attorney's fees to the plaintiffs.[33] We affirmed this award because "[a]ll of the fees sought by plaintiffs relate[d] to attorney services performed before a final judgment was entered in the trial court" and the various stages of the litigation were "significantly related." [34]

 "Once a public interest litigant has been identified as the prevailing party, his or her varying degree of success on the different issues is rarely a component of a 'reasonable fee.' " [35] The public interest litigant rule is designed "to encourage plaintiffs to raise issues of public interest by removing the awesome financial burden of such a suit." [36] Fees for a public interest litigant should be apportioned only "in exceptional circumstances," but the superior court may apportion fees if it determines that some issues or proceedings were "so frivolous that apportionment of attorney's fees would be necessary to determine reasonable fees." [37]

On remand if the superior court determines that Halloran was the prevailing party, it should consider, in deciding what fee award is appropriate, whether the stages of

29. A party is a public interest litigant "if (1) the case was designed to effectuate strong public policies; (2) numerous people would benefit if the litigant succeeded; (3) only a private party could be expected to bring the suit; and (4) the litigant lacked sufficient economic incentive to bring suit." *Matanuska Elec. Ass'n v. Rewire the Bd.,* 36 P.3d 685, 696, 698 (Alaska 2001) (affirming superior court's determination that members of rural electrical co-op were public interest litigants in suit to remove co-op's directors).

30. *See id.*

31. The record contains Halloran's "summary of fees incurred"; it seems to suggest that a relatively small part of the fees was incurred for work before the TRO was issued.

32. *Hickel v. Southeast Conference,* 868 P.2d 919, 927 (Alaska 1994).

33. *Id.* at 933.

34. *Id.* at 926, 927.

35. *Dansereau v. Ulmer,* 955 P.2d 916, 920 (Alaska 1998) (reversing superior court's apportionment of attorney's fees by issue because it had not found that any of public interest litigant's claims were frivolous).

36. *Anchorage v. McCabe,* 568 P.2d 986, 990 (Alaska 1977) (reaffirming policy of awarding public interest litigants full reasonable attorney's fees).

37. *Dansereau,* 955 P.2d at 920 & n. 4.

Halloran's litigation were substantially related, whether the attorney's fees were incurred before entry of final judgment, and whether any of Halloran's claims or proceedings were frivolous.

## IV. CONCLUSION

For the reasons discussed above, we VACATE the order denying an award of fees to Halloran and REMAND.